UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | ) | Civil Action No. JFM-02-1524 |
| | ) | |
| and | ) | |
| | ) | |
| BLUE WATER BALTIMORE, | ) | |
| | ) | |
| Applicant for Intervention, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAYOR AND CITY COUNCIL OF | ) | |
| BALTIMORE, MARYLAND, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MEMORANDUM IN SUPPORT OF BLUE WATER BALTIMORE'S
MOTION TO INTERVENE**

---

Pursuant to Federal Rule of Civil Procedure 24(a) and 24(b), Blue Water Baltimore ("Plaintiff-Intervenor") moves to intervene in this lawsuit as a plaintiff. The underlying suit is a Clean Water Act enforcement action brought by Plaintiffs the United States of America and the State of Maryland (collectively, "Plaintiffs") against the City of Baltimore, alleging a number of violations of the Clean Water Act ("CWA") relating to Baltimore's sewer system and publicly owned treatment works. In 2002, this Court approved a consent decree (the "Consent Decree") obligating the City of Baltimore to undertake a number of actions designed to address the underlying alleged CWA violations.

Over the past decade, the City of Baltimore has failed to comply with a number of the Consent Decree's requirements, and Plaintiffs have failed to fully and effectively enforce the requirements of the Consent Decree.  Plaintiff-Intervenor has learned that the City of Baltimore and the Environmental Protection Agency ("EPA") are currently in negotiations over possible modifications to the Consent Decree, which will have to be approved by this Court before they may become effective.

Plaintiff-Intervenor seeks to exercise its statutory right to intervene in this action pursuant to 33 U.S.C. § 1365(b)(1)(B) in order to present its views concerning proposed modifications to the Consent Decree, including without limitation whether the proposed modifications are consistent with the purposes of the Consent Decree and whether they adequately addresses the City of Baltimore's ongoing violations of the CWA and lack of compliance with the Consent Decree.

Accordingly, Plaintiff-Intervenor respectfully requests that the Court grant the motion to intervene.

## **BACKGROUND**

### I.     The 2002 Litigation & Consent Decree

In April 2002, the United States and the State of Maryland brought suit against the City of Baltimore in this Court, alleging "hundreds of discharges of untreated wastewater containing raw sewage" from Baltimore's sewage system, "which were not discharged through a permitted outfall and were not authorized under any NPDES permit issued to Baltimore City."  Plaintiffs' Compl. ¶ 42.  The complaint outlined a number of instances of unpermitted sewage discharges, and concluded that between January 1996 and 2002 "at least 110 million gallons of wastewater containing raw sewage have been illegally discharged from Baltimore City's separate sanitary

sewer system." Plaintiffs' Compl. ¶ 46. The complaint alleged violations of the CWA and state

law and requested an injunction directing the City to come into "permanent, consistent"

compliance with the CWA. Plaintiffs' Compl. at 19.

The same day the complaint was filed, a proposed Consent Decree was lodged with the

Court, which approved the Consent Decree on September 30, 2002. The Consent Decree was

designed to require Baltimore to "eliminate" all "Sanitary Sewer Overflows" and "all Combined

Sewer Overflow discharges" through the implementation of remedial measures specified in the

decree. Consent Decree ¶ 8.A. To that end, the complaint outlined a number of steps the City

would be required to take, including construction projects, inspection and maintenance

obligations, and reporting of discharge events. Consent Decree ¶¶ 8-17.

The Consent Decree also contained two requirements relevant to any ongoing violations

of and proposed modifications to the decree. First, the Consent Decree provides that any

modification must be "in writing and filed with the Court before it will be deemed effective . . . .

Nothing in this Consent Decree shall be interpreted as modifying the scope and standard of

review that the Court will exercise in reviewing a petition for modification." Consent Decree

¶ 69. Second, this Court "retain[ed] jurisdiction of this matter for the purposes of implementing

and enforcing the terms and conditions of this Consent Decree." Consent Decree ¶ 40.

## II. Blue Water Baltimore

The mission of Blue Water Baltimore is to restore the quality of Baltimore's rivers,

streams and harbor to foster a healthy environment, a strong economy, and thriving communities.

Declaration of Halle Van der Gaag ("Van der Gaag Decl.") ¶ 5 (attached as Exhibit A to Blue

Water Baltimore's Complaint in Intervention). Blue Water Baltimore is a Maryland nonprofit

corporation formed in 2010 as a result of a merger between five separate Baltimore organizations

involved in water quality issues.  Van der Gaag Decl. ¶¶ 3-4.  Blue Water Baltimore has

expressed concerns with the City of Baltimore's sewage discharges since its formation in 2010,

and its predecessors have been involved with these issues since at least 2008.  Van der Gaag

Decl. ¶¶ 6, 12.

    In November 2012, Blue Water Baltimore met with EPA to discuss the City of

Baltimore's lack of compliance with the Consent Decree.  At this meeting, Blue Water Baltimore

provided documentation of six specific, substantial sewage overflows and incidents.  EPA

informed Blue Water Baltimore at this time that it was negotiating with the City of Baltimore

regarding revisions to the Consent Decree.

    In February 2013, Blue Water Baltimore sent a letter to EPA, MDE, and the City of

Baltimore again documenting specific, serious examples of noncompliance with the Consent

Decree.  *See* Exhibit D to Blue Water Baltimore's Complaint in Intervention.  Negotiations

between EPA and the City of Baltimore over possible modifications to the Consent Decree were

widely publicized in a May 30, 2013, local newspaper article.  Those negotiations remain

ongoing.

## ARGUMENT

    Three separate provisions support the motion of Blue Water Baltimore to intervene in this

action.  First, 33 U.S.C. § 1365(b)(1)(B) permits Plaintiff-Intervenor to "intervene as a matter of

right," and thus intervention is appropriate under Federal Rule of Civil Procedure 24(a)(1).

Second, Plaintiff-Intervenor may intervene as of right under Rule 24(a)(2), as it has an interest in

the unlawful sewage discharges that are the subject of this suit that is not adequately represented

by the existing parties.  Third, the claims outlined in the proposed Complaint in Intervention

share common issues of fact and law with the underlying action and Consent Decree, and so

intervention is permissible under Rule 24(b)(1)(B).  Finally, Plaintiff-Intervenor has standing to intervene in this action, as its members have suffered and will continue to suffer adverse impacts from the City of Baltimore's unlawful sewage discharges.  Accordingly, this Court should grant Plaintiff-Intervenor's motion to intervene.

## I.  Plaintiff-Intervenor May Intervene Under Federal Rule of Civil Procedure 24(a)(1).

Intervention under Federal Rule of Civil Procedure 24(a)(1) is allowed as of right where the proposed plaintiff-intervenor satisfies three conditions: (1) the plaintiff-intervenor "is given an unconditional right to intervene by a federal statute," (2) the plaintiff-intervenor files a "timely motion," and (3) the plaintiff-intervenor's motion to intervene is "accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(a), (c).  All three requirements are satisfied here.  In addition, Plaintiff-Intervenor has standing to sue.

### A.  Plaintiff-Intervenor Has An Unconditional Statutory Right To Intervene Under 33 U.S.C. § 1365(b).

The Clean Water Act provides that where the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court to require compliance with the CWA, then "in any such action in a court of the United States any citizen may intervene as matter of right."  33 U.S.C. § 1365(b)(1)(B).

The plain language of this provision confers an unconditional statutory right to intervene, as a number of courts have held, and as the United States has conceded in other cases.  *See, e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 833 F.2d 54, 56 (8th Cir. 1989) (holding that this provision permits intervention "as a matter of right"); *United States v. City of Baton Rouge*, No. 01-978, 2012 U.S. Dist. LEXIS 55671, at *3 (M.D. La. Apr. 20, 2012) (noting that the United States conceded that this provision provides "a statutory unconditional right to intervene"); *see*

*also United States v. Mississippi*, 958 F.2d 112, 115 (5th Cir. 1992) (noting that "[t]his statutory language clearly evinces the legislature's intent to provide for a mandatory right of intervention").

It is beyond dispute that Blue Water Baltimore is a "citizen" within the meaning of § 1365(b)(1)(B).  The CWA defines a citizen as "a person or persons having an interest which is or may be adversely affected."  33 U.S.C. § 1365(g).  "Person," in turn, includes a "corporation." 33 U.S.C. § 1362(5).  Blue Water Baltimore is a corporation and so is a "person" within the meaning of the CWA.

Blue Water Baltimore's interest "may be adversely affected" by this suit, as is set forth in the attached Complaint in Intervention.  Further, as is discussed more fully in connection with standing, below, Blue Water Baltimore's members have been directly impacted by unlawful discharges from the City of Baltimore's sewage system.

Accordingly, Blue Water Baltimore has an unconditional statutory right to intervene in the present action, and intervention is proper under Federal Rule of Civil Procedure 24(a)(1).[1]

**B.      Plaintiff-Intervenor's Motion Is Timely.**

Plaintiff-Intervenor's motion to intervene is timely for two reasons.  First, Plaintiffs and the City of Baltimore are in negotiations over potential modifications to the Consent Decree. Accordingly, it is an appropriate time for Plaintiff-Intervenor to intervene in the suit, as it is authorized to do by statute, so that Plaintiff-Intervenor may participate in such negotiations and may present its position regarding such modifications to this Court.

Second, intervention to ensure enforcement of consent decrees that are being violated

---

[1] Federal Rule of Civil Procedure 24(b)(1)(A) also permits intervention by "anyone" who "is given a conditional right to intervene by a federal statute."

logically occurs after entry of the consent decree: it is only after a consent decree has been entered that the effectiveness of the decree can be assessed.  It would be burdensome, for both the court and concerned third parties, and neither necessary or appropriate to require intervention before entry of the consent decree in order for third parties to preserve their right to challenge noncompliance with and insufficient enforcement of the decree.  Accordingly, Plaintiff-Intervenor's motion to intervene is timely.  *See City of Baton Rouge*, 2012 U.S. Dist. LEXIS 55671, at *4-5.

"[A] district court has wide discretion in concluding that an application for intervention is timely . . . ."  *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1982).  The Fourth Circuit has outlined three factors to consider in determining whether a motion to intervene is timely: "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene."  *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989).  Here, each factor weighs in favor of finding intervention timely.  Moreover, where intervention is "of right," as is the case here, "the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive."  *Brink*, 667 F.2d at 428.

In this case, the third factor – the reason for any delay in moving to intervene – is the most important factor.  Unlike the typical case where intervention is at issue, the basis for intervention here stems from (1) negotiations between the parties regarding modifications to the Consent Decree and (2) insufficient enforcement of the Consent Decree.  Neither basis for intervention could have been predicted when the Consent Decree was filed, and Blue Water Baltimore has timely moved to intervene in light of learning that negotiations are underway, and in light of its correspondence earlier this year with Plaintiffs and the City of Baltimore as to

certain failings of the Consent Decree.

As the court in *City of Baton Rouge* explained in rejecting the argument that the motion to intervene was untimely:

> The critical distinction between this case and those relied upon by plaintiff USA is that the proposed intervenors are not seeking to intervene because they disagree with the terms of the original Consent Decree, or even with the first Consent Decree modification. It is apparent that the reason for seeking to intervene is because the parties are now proposing a significant modification of the Consent Decree, and because the intervenors perceive that the plaintiffs are not aggressively enforcing the existing Consent Decree and are permitting violation of the CWA to go unabated.

*City of Baton Rouge*, 2012 U.S. Dist. LEXIS 55671, at *6. So too here.

As to the second factor, no party will suffer prejudice if Blue Water Baltimore is permitted to intervene. Plaintiff-Intervenor seeks to intervene for the limited purposes of participating in negotiations over any proposed modification to the Consent Decree and presenting argument and evidence to the Court if the proposed modifications are not in the public interest. Intervention for these purposes will not prejudice Plaintiffs or the City of Baltimore and will not unduly delay the proceedings.

Finally, as to the first factor, "[a] motion for intervention is not necessarily untimely merely because it was made after judgment was entered in the case. The most important consideration is whether the delay prejudiced the other parties." *Patterson v. Shumate*, 912 F.2d 463, 463 (4th Cir. 1990) (per curiam). Here, as discussed above, there will be no prejudice to the other parties if Plaintiff-Intervenor is permitted to intervene, and Plaintiff-Intervenor has valid reasons for seeking to intervene at this time.

**C.      Plaintiff-Intervenor Has Provided A Complaint In Intervention.**

As required by Federal Rule of Civil Procedure 24(c), the motion to intervene of Blue

Water Baltimore is "accompanied by a pleading that sets out the claim or defense for which

intervention is sought."

**D.      Plaintiff-Intervenor Has Standing To Intervene.**

Plaintiff-Intervenor has standing to intervene in this suit.[2]  "An association has standing

to bring suit on behalf of its members when [1] its members would otherwise have standing to

sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3]

neither the claim asserted nor the relief requested requires the participation of individual

members in the lawsuit."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

U.S. 167, 181 (2000).  Each requirement is satisfied here.

A number of Plaintiff-Intervenor's members would have standing to sue in their own

right.  "In the environmental litigation context, the standing requirements are not onerous."  *Am.*

*Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003).  "[E]nvironmental

plaintiffs adequately allege injury in fact when they aver that they use the affected area and are

persons 'for whom the aesthetic and recreational values of the area will be lessened' by the

challenged activity."  *Friends of the Earth*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405

U.S. 727, 735 (1972)).

Members of Blue Water Baltimore have been adversely impacted by unlawful sewage

---

[2] It is not clear that a plaintiff-intervenor must have standing in order to be able to intervene.  *See United States v. Arch Coal, Inc.*, No. 11-0133, 2011 U.S. Dist. LEXIS 66789, at *19 n.4 (S.D. W. Va. June 22, 2011) (discussing a split of authority on this question and noting that the Fourth Circuit has not resolved the issue); *see also* Wright & Miller, *Federal Practice & Procedure* § 1908 (3d ed. 2013) ("[S]ome courts have ruled that, in addition to satisfying the requirements of Rule 24(a), the intervenor must have Article III standing.  Other courts have held that standing is not required.").  Assuming that Blue Water Baltimore is required to demonstrate standing, it has done so.

discharges from the City of Baltimore, as is set forth in the declarations of two Blue Water

Baltimore members attached to the Complaint in Intervention.  *See* Declaration of Robert J.

Mayes ("Mayes Decl.") (attached as Exhibit B to Blue Water Baltimore's Complaint in

Intervention); Declaration of Gregory Skipper ("Skipper Decl.") (attached as Exhibit C to Blue

Water Baltimore's Complaint in Intervention).  Gregory Skipper, a Blue Water Baltimore

member, resides on the Baltimore Harbor waterfront and engages in a number of recreational

activities which have been harmed by unlawful sewage discharges, including running, playing

sports, and entertaining guests.  Skipper Decl. ¶¶ 11-19, 21.  In addition, he avoids any

recreational activity that would involve contact with the Harbor's water, due to unlawful sewage

pollution.  Skipper Decl. ¶ 20.  Bob Mayes, another Blue Water Baltimore member, resides near

a tributary of the Herring Run waterway in Baltimore and has had a number of recreational

activities harmed by unlawful sewage discharges into the Herring Run, including running,

hiking, and bird watching.  Mayes Decl. ¶¶ 5, 10-20.  He also avoids recreational activity that

would involve contact with Herring Run's water and refrains from fishing there due to concerns

regarding unlawful sewage pollution.  Mayes Decl.  ¶¶ 21, 23.  Both members plan to continue to

engage in their respective recreational activities, but will continue to suffer decreased enjoyment

and will avoid areas they would otherwise visit so long as unlawful sewage discharges continue

into the Herring Run and the Harbor.  Skipper Decl. ¶ 19; Mayes Decl. ¶ 22.  Both are also

concerned about the environmental and public health risks created by unlawful sewage

discharges.  Skipper Decl. ¶ 11; Mayes Decl. ¶ 10.

  The facts outlined in these declarations are analogous to circumstances where the Fourth

Circuit has found standing.  *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629

F.3d 387, 397 (4th Cir. 2011) (decrease in the number of trips taken by a kayaker on water body

due to "reasonable concern that runoff from [defendant's] facility is polluting the waters in that area" is sufficient to confer standing); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 193 n.10 (4th Cir. 2009) (holding that where an individual travels to a potential "mine site to take photographs of nature and she intends to do so regularly in the future," standing is established with respect to a permit application at that mine site).

As to the second requirement, an interest in the proper enforcement of a consent decree governing sewage discharge is germane to Blue Water Baltimore's purpose.  Van der Gaag Decl. ¶¶ 11-12.  Blue Water Baltimore's mission is to "restore the quality of Baltimore's rivers, streams and harbor to foster a healthy environment, a strong economy, and thriving communities," and preventing unlawful sewage discharges is a part of that mission.  Van der Gaag Decl. ¶ 5.[3]  Indeed, Blue Water Baltimore has a specific campaign focused on addressing sewage pollution and has been involved in sewage issues relating to the City of Baltimore for years.  Van der Gaag Decl. ¶ 12.[4]  Accordingly, the second requirement for associational standing is satisfied.

Finally, the third requirement – that neither the claim asserted nor the relief requested require participation of the individual members – is also met here.  Nothing about the nature of Plaintiff-Intervenor's claim asserted in its Complaint in Intervention nor the relief requested requires participation of its individual members, nor would a grant of relief impact its individual members in such a way as to require their participation in the suit.  Rather, this is a quintessential type of suit brought by environmental organizations that does not require direct participation of

---

[3] *See also* Blue Water Baltimore, *Mission and History*, http://www.bluewaterbaltimore.org/about/mission_history/ (last accessed July 29, 2013).

[4] *See also* Blue Water Baltimore, *Sewage Pollution*, http://www.bluewaterbaltimore.org/the-waterkeeper/programs/sewage-pollution/ (last accessed July 29, 2013).

any individual members.

## II.     Plaintiff-Intervenor May Intervene Under Federal Rule of Civil Procedure 24(a)(2).

In the alternative, intervention is appropriate as of right under Rule 24(a)(2).  To

intervene under this provision, an intervenor must satisfy four requirements: "(1) the application

to intervene must be timely; (2) the applicant must have an interest in the subject matter of the

underlying action; (3) the denial of the motion to intervene would impair or impede the

applicant's ability to protect its interest; and (4) the applicant's interest is not adequately

represented by the existing parties to the litigation."  *Houston Gen. Ins. Co. v. Moore*, 193 F.3d

838, 839 (4th Cir. 1999).  The timeliness requirement is satisfied for the reasons set forth above.

Plaintiff-Intervenor has an interest in the subject matter at issue here – the sewage

discharges in and around the City of Baltimore – for the same reasons Plaintiff-Intervenor has

standing to intervene.  Plaintiff-Intervenor has long been involved in discussions with Plaintiffs

and the City of Baltimore regarding sewage discharges, and its members have an interest in

avoiding the adverse impacts of such discharges.  Courts have reasoned that it is "'indisputable'

that a prospective intervenor's environmental concern is a legally protectable interest."

*WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quoting *San*

*Juan County v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc)).[5]

As to the third criterion, the rule requires only that the disposition of the action "*may as a*

*practical matter* impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P.

24(a)(2) (emphasis added).  Here, entry of a modified consent decree or failure to require more

---

[5] *See also Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996) (holding that a national park association's interest "in preventing unrestricted snowmobiling and in vindicating a conservationist vision for the Park" is sufficient under Rule 24(a)); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding that the Audubon Society's interest in birds and other wildlife is sufficient under Rule 24(a)).

stringent enforcement of the existing Consent Decree could well impair Plaintiff-Intervenor's interest in ensuring the elimination of unlawful sewage discharges by the City of Baltimore and the protection of Baltimore citizens' health and safety.  In similar contexts, courts have found "no serious dispute" that resolution of environmental litigation can impair or impede an environmental group's ability to protect its interest related to that suit.  *Sagebrush*, 713 F.3d at 528; *see also Masoulf*, 85 F.3d at 1302-03 (noting that this requirement is satisfied where the government might "settle [the case] against the Association's interests").

Finally, Plaintiff-Intervenor's interest is not adequately represented by the Plaintiffs. "The burden of establishing this lack of adequate representation is 'minimal' . . . ." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981) (quoting *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972)).  The requirement is satisfied so long as the representation "may be" inadequate, as is the case here.  *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991).  To begin with, the Fourth Circuit has recognized that governmental entities are often "not an adequate representative" for environmental groups, because the governmental entities must represent the views of "all of the citizens," including those who disagree with more stringent environmental regulation, while environmental organizations typically "represent only a subset of citizens concerned" with the particular environmental matters at issue.  *In re Sierra Club*, 945 F.2d at 780.  The standard is also met for the additional reason that Plaintiff's insufficient enforcement of the existing Consent Decree is a major reason Plaintiff-Intervenor seeks to intervene.  *See Masoulf*, 85 F.3d at 1303 (adequate representation does not exist where the government has "failed to enforce regulations" which an environmental group wishes to see enforced by intervening).

Federal Rule of Civil Procedure 24(a)(2) thus provides an additional basis for

intervention in this suit.

### III.    Plaintiff-Intervenor May Intervene Under Federal Rule of Civil Procedure 24(b)(1)(B).

In the alternative, this Court should permit intervention under Rule 24(b)(1)(B). Intervention is appropriate under this provision where the proposed plaintiff-intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In addition, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Whether to permit intervention under Rule 24(b) "lies within the sound discretion of the trial court." *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982).

The claims outlined in the proposed Complaint in Intervention clearly raise "common question[s] of law or fact." The City of Baltimore's pre-2002 unlawful sewage discharges are the genesis of both the original complaint in this action and the proposed Complaint in Intervention. Further, the factual issues relating to lack of enforcement of the Consent Decree raise questions that overlap with the questions this Court will have to address in approving any modification of the Consent Decree. As to questions of law, both the original action and the proposed Complaint in Intervention raise the issue of whether the City of Baltimore is in compliance with the Clean Water Act and its implementing regulations with respect to sewage discharges. Further, the proposed Complaint in Intervention raises questions as to whether the City of Baltimore is in compliance with the Consent Decree, issues of fact and law over which this Court has retained continuing jurisdiction. Consent Decree ¶ 40 ("This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree . . . .").

As discussed above in connection with Plaintiff-Intervenor's statutory right to intervene

under the CWA, intervention will not unduly delay this action or prejudice any party.

## CONCLUSION

For the foregoing reasons, the Motion to Intervene of Blue Water Baltimore should be granted.

Respectfully submitted,

Dated:  July 31, 2013

  /s/ Patrick M. Phelan
Theodore L. Garrett
Patrick M. Phelan
Federal Bar No. 29283
Thomas R. Brugato
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 662-6000
Fax: (202) 778-5107
Email: pphelan@cov.com

*Counsel for Blue Water Baltimore*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2013, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Maryland using the CM/ECF system.

I hereby certify that on July 31, 2013, I served the following individuals via first class mail, pursuant to Federal Rule of Civil Procedure 5(b)(1):

Cara M. Mroczek
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611
Tel.: (202) 514-1447
Fax: (202) 616-6583
Email: cara.mroczek@usdoj.gov

P. Michael Cunningham
Office of the United States Attorney
36 S. Charles St. 4th Fl.
Baltimore, MD 21201
Tel: (410) 209-4884
Fax: (410) 962-3091
Email: michael.cunningham@usdoj.gov

Nancy Young
Assistant Attorney General
Maryland Dept. of the Environment
Office of the Attorney General
1800 Washington Boulevard
Baltimore, MD 21230-1718
Tel: (410) 537-3042
Email: nyoung@mde.state.md.

Jennifer L. Wazenski
Office of the Attorney General
Maryland Dept. of Natural Resources
580 Taylor Ave. Ste. C4
Annapolis, MD 21401
Tel: (410) 260-8350
Fax: (410) 260-8364
Email: jwazenski@dnr.state.md.us

George Nilson
City Solicitor
Baltimore City Law Dept.
100 N. Holiday St. Ste. 101
Baltimore, MD 21202
Tel: (410) 396-3297

Thurman W. Zollicoffer, Jr.
Whiteford Taylor and Preston LLP
Seven Saint Paul St. Ste. 1400
Baltimore, MD 21202
Tel: (410) 347-9453
Email: tzollicoffer@wtplaw.com

Peter E. Keith
Gallagher Evelius and Jones LLP
218 N. Charles St. 400
Baltimore, MD 21201
Tel: (410) 727-7702
Fax: (410) 468-2786
Email: pkeith@gejlaw.com

Dated: July 31, 2013

      /s/ Patrick M. Phelan
Patrick M. Phelan
Federal Bar No. 29283
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 662-6000
Fax: (202) 778-5107
Email: pphelan@cov.com

*Counsel for Blue Water Baltimore*