**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA, et al.,

                    Plaintiffs,

    v.

MAYOR AND CITY COUNCIL OF
BALTIMORE, MARYLAND,

                    Defendant.

Civil Action No. JFM-02-1524

**DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE'S
RESPONSE TO MOTION FOR LEAVE TO INTERVENE**

## TABLE OF CONTENTS

PAGE

RELEVANT BACKGROUND ..........................................................................................2

ARGUMENT ..............................................................................................................4

    A.    Legal Requirements for Intervention ....................................................4

    B.    Blue Water's Motion Is Untimely..........................................................5

            1.    Blue Water's Motion is Premature Because the Parties Have Not Moved for a Modification of the Consent Decree and There Is No Pending Litigation Before The Court ............................................6

            2.    Private Negotiations Between Existing Parties are Distinct From Pending Litigation and Do Not Provide Adequate Grounds for Intervention as of Right Under Fed. R. Civ. P. 24(a). ....................................9

            3.    Courts Do Not Permit Intervention Based on A Movant's Unsupported Speculation That it May Object to Future Actions of the Existing Parties ................................................................10

            4.    Blue Water's Motion is Untimely Because It Was Filed Eleven Years After Entry of the Underlying Consent Decree ................................11

            5.    Allowing Blue Water to Intervene for the Purpose of Attempting to Participate in Settlement Negotiations Will Cause Significant Prejudice to Existing Parties ........................................................12

    C.    Intervention under Rule 24(a)(2) and (b) Should Be Denied ...............................15

            1.    Intervention as of Right under Rule 24(a)(2) Should Be Denied Because the Motion is Untimely and Blue Water Cannot Show That Its Interests Are Not Adequately Represented by Existing Plaintiffs ..........15

            2.    Permissive Intervention under Rule 24(b) Should Be Denied Because the Broad Scope of the Proposed Intervention Would Substantially Prejudice the Existing Parties ....................................................16

CONCLUSION.............................................................................................................18

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>MAYOR AND CITY COUNCIL OF BALTIMORE, MARYLAND,<br><br>    Defendant. | Civil Action No. JFM-02-1524 |

**DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE'S
RESPONSE TO MOTION FOR LEAVE TO INTERVENE**

Defendant, Mayor and City Council of Baltimore ("Baltimore City" or "City"), by and through its undersigned counsel, submit this Response to the Motion for Leave to Intervene ("Motion") filed on July 31, 2013 by Blue Water Baltimore ("Blue Water"), an environmental organization that seeks intervention as a Plaintiff in this action.

The City has long appreciated, and has often solicited, the input of environmental organizations and recognizes Blue Water's commitment to improving the quality of Baltimore's rivers, streams, and Harbor.  In fact, staff members of the City's Department of Public Works ("DPW") routinely meet with representatives of Blue Water to discuss issues of mutual concern and interest.  However, Blue Water's Motion is untimely for the reasons noted below.  There is no pending litigation before the Court.  The parties have not filed any pleadings, motions, or other documents since entry of the 2002 Consent Decree.  Allowing intervention more than ten years after the entry of the Consent Decree would be untimely and cause significant prejudice to the existing parties, particularly Baltimore City.  Defendant respectfully requests that the Court deny the Motion.

## RELEVANT BACKGROUND

On April 26, 2002, the United States and the State of Maryland filed a Complaint against the City alleging violations of Sections 301, 309(b), and 505(a) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311, 1319(b), 1365(a), and related provisions of Title 9, Subtitle 3 of the Environmental Article, Annotated Code of Maryland, based upon unpermitted discharges of sewage from the City's sanitary sewer system.   Also on April 26, 2002, Plaintiffs lodged a proposed Consent Decree with the Court that resolved each of the claims alleged in the Complaint.  A product of more than a year of negotiations between the United States, the State of Maryland and the City, the Consent Decree was designed to avoid litigation and reflected a cooperative settlement by the federal, state and local governments to renovate the City's sewer system.

The United States published notice of the proposed Consent Decree and solicited public comments in the Federal Register on May 16, 2002 as required by the public notice obligations in 28 C.F.R. § 50.7.  67 Fed. Reg. 34953 (May 16, 2002).  The United States received comments from the Herring Run Watershed Association[1] as well as a private citizen.  The comment letters and the United States' point-by-point response were included in the September 27, 2002 Joint Motion of the United States and the State of Maryland for Entry of the Consent Decree.  The Court entered the Consent Decree on September 30, 2002 and the matter was closed.

The Consent Decree requires Baltimore City to investigate and rehabilitate its wastewater collection and treatment system which includes two wastewater treatment plants, nine major pumping stations, ten minor pumping stations, and 1,400 miles of sewer mains and interceptors, and to bring the City into compliance with the CWA.   The Consent Decree includes a

---

[1] The Herring Run Watershed Association is a member of Blue Water.  *See* Declaration of Halle Van der Gaag ("Van der Gaag Decl.") ¶ 4 (attached as Exhibit A to Blue Water's Complaint in Intervention).

comprehensive list of required actions and an enforceable schedule with milestone dates and stipulated penalties for failure to perform required tasks.

After entry of the Consent Decree, the City embarked on an extensive investigation, rehabilitation and construction program and to date has committed more than $600 million[2] in furtherance of this effort. *See* **Exhibit 1**, Affidavit of Wazir Qadri, DPW Chief of Wastewater Engineering and Summary Chart of Approximate Consent Decree Compliance Costs for Paragraph 8 and Paragraph 9 Projects.  The City will continue to undertake construction projects that will ensure that its collection and treatment system has adequate capacity to handle anticipated wastewater flows and is operated in a manner consistent with its obligations under the CWA and State law.

The Consent Decree contains an all-encompassing mechanism for addressing deficiencies in the City's wastewater collection and treatment system and provides that the City shall pay stipulated penalties to the United States and the State of Maryland for the failure to comply with the required remedial measures by specified milestone dates and for any sanitary sewer overflows ("SSOs") that occur.  *See* Consent Decree ¶¶ 8-17 and 23.  Since entry of the Consent Decree, Baltimore City has reported violations to EPA/MDE and has paid all assessed monetary penalties.  The Consent Decree also contains extensive dispute resolution provisions.  *Id.* at ¶¶ 41-46.  These provisions have never been invoked by any party over the past eleven (11) years as the Consent Decree has been implemented.

In support of its Motion, Blue Water suggests that there is a long history of noncompliance on the part of the Baltimore City, extending back to 2003.  *See* Motion at ¶ 2

---

[2] The total for Consent Decree related expenses is considerably higher if the cost of the removal of the hydraulic constraint at the Back River Waste Water Treatment Plant is included.  This project is necessary in order for the City to complete removal of the remaining engineered Sanitary Overflow Structures.

("[o]ver the past decade, the City of Baltimore has failed to comply with a number of the Consent Decree's requirements").   The City respectfully and strongly disagrees with this assertion.   Blue Water also invokes the possibility of a Consent Decree modification as justification for its proposed intervention.   *Id.*   Neither claimed basis supports a request for intervention at this time.

## ARGUMENT

### A.  Legal Requirements for Intervention

Blue Water seeks intervention of right under Fed. R. Civ. P. 24(a), or alternatively, permissive intervention under Fed. R. Civ. P. 24(b).   Intervention is not proper at this time under either theory.

Intervention of right is granted to a movant who "[o]n ***timely*** motion"

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a) (emphasis added).   Intervention under Fed. R. Civ. P. 24(a)(1) is permitted as of right where the movant "is given an unconditional right to intervene by a federal statute." The CWA, 33 U.S.C. § 1365(b)(1)(B), provides that if the EPA Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court to require compliance with the CWA, then "in any such action in a court of the United States any citizen may intervene as a matter of right."   Significantly, even if the movant has a statutory right to intervene under Fed. R. Civ. P. 24(a)(1), intervention is permitted only upon the intervening party's ***timely*** motion.   In addition, intervention as a matter of right under the CWA does not authorize or entitle the proposed intervenor to participate in confidential settlement negotiations

between the parties.  *See United States v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-386-KSF, 2007 WL 2020246, *3 (E.D. Ky. July 6, 2007) ("there is no statute, rule, or case law giving a court authority to compel specific parties involved in private settlement negotiations to involve a third party or any other party to the suit.").

Blue Water argues it should be permitted to intervene as of right under Fed. R. Civ. P. 24(a)(2).  To do so, Blue Water must show that it meets *all* factors of Rule 24(a)(2): (1) a timely motion; (2) a "direct and substantial interest" in the subject matter of the litigation; (3) a practical impairment to its ability to protect its interests if intervention is not allowed; and (4) the inadequacy of representation of its interests by the current parties.  *See Richman v. First Woman's Bank,* 104 F.3d 654, 659 (4th Cir. 1997); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).

Alternatively, Blue Water claims it should be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b).  Permissive intervention may be allowed in the Court's discretion if: (1) a timely motion is filed; (2) the movants' claims share a common question of law or fact with the claims in the case; and (3) intervention would not cause undue delay or prejudice to the adjudication of the parties' rights.  Fed. R. Civ. P. 24(b)(1)-(3).  Trial courts have considerable discretion in determining whether to permit permissive intervention.  *See Brink v. DaLesio,* 667 F.2d 420, 428 (4th Cir. 1982).

### B.  Blue Water's Motion Is Untimely

Blue Water must show that its motion is timely to be granted intervention under either Fed. R. Civ. P. 24(a) or (b).  The issue of timeliness is a threshold matter; if a motion is untimely, a court need not consider it further.  *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) ("timeliness is a 'cardinal consideration' of whether to permit intervention"); *see also*

*Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) ("timeliness stands as a sentinel at the gates whenever intervention is requested and opposed").

The Fourth Circuit has established certain criteria to evaluate the timeliness of a motion to intervene, which include: "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for tardiness in moving to intervene." *Gould,* 883 F.2d at 286 (finding that a motion to intervene was untimely two years after the filing of an initial complaint because of extensive litigation between the parties). Blue Water's Motion should be denied because no pleadings or motions are currently pending before the Court and almost 11 years have elapsed since entry of the Consent Decree.[3]

> 1. *Blue Water's Motion is Premature Because the Parties Have Not Moved for a Modification of the Consent Decree and There is No Pending Litigation Before The Court*

"Courts should discourage premature intervention [because it] wastes judicial resources." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). The 2002 Consent Decree was a final judgment and there is currently no pending litigation between the parties in which Blue Water can intervene. Although the Court retains continuing jurisdiction throughout the implementation of the Consent Decree,[4] Blue Water has not cited any case law in which a movant was permitted

---

[3] This case is distinguishable from *Severstal Sparrows Point, LLC v. U.S. E.P.A.,* 794 F. Supp. 2d 624, 632 (D. Md. 2011), where environmental groups and citizens were permitted to intervene in a dispute resolution proceeding between Severstal and EPA, initiated pursuant to the dispute resolution provisions of a 1997 Consent Decree. *Severstal* is distinguishable because although the Consent Decree was entered in 1997, Severstal had filed a petition for dispute resolution with the Court in July 2010. Just days after EPA filed its response, the intervenors moved to intervene in the dispute resolution proceeding only. Therefore, there was an active dispute, initiated by the existing parties, pending before the Court at the time the Motion to Intervene was filed. In granting the Motion to Intervene, this Court held that "because the intervention is into the dispute resolution only, ***not into the original lawsuit that led to the entry of the Consent Decree***, the intervention is timely." *Id.* at 626, n.2 (emphasis added). The Court also recognized that the outcome of the dispute effectively modified Severstal's obligations under the Consent Decree. *See id.* at 631 n. 8.

[4] The 2002 Baltimore City Consent Decree states that the "[c]ourt shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among that Parties that may arise under the provisions of this Consent Decree, to the extent that this Consent Decree provides for resolution of disputes by the Court." Consent Decree at ¶ 40.

to intervene more than ten years after the entry of a consent decree without any issues currently pending before the court.[5]

Blue Water argues that even though more than a decade has passed since entry of the Consent Decree, its motion is timely because the parties "are in negotiations over **potential** modifications to the Consent Decree" and intervention is appropriate at this time so that Blue Water "may participate in such negotiations[.]"   *See* Memorandum in Support of Blue Water Baltimore's Motion to Intervene ("Mem. in Support") at 6 (emphasis added).   In the absence of any dispute or court filing during the past 11 years, the fact that the parties may be negotiating **potential** modifications to the 2002 Consent Decree does not transform an untimely motion to intervene into a timely one.   *Espy,* 18 F.3d at 1206 ("[W]e reject[ ] the notion that the date on which the would-be intervener became aware of the pendency of the action should be used to determine whether it acted promptly.").   Permitting early intervention based on a possible future modification will interfere with any ongoing discussions between the parties and result in needless prejudice to the existing parties, purposeless litigation, increased costs and a squandering of scarce judicial resources.   *See Stallworth v. Monsanto Co.,* 558 F.2d 257, 265 (5th Cir. 1977).

The entry of the 2002 Consent Decree constituted a final judgment.   *See Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 391 (1992) ("a consent decree is a final judgment that may be reopened only to the extent that equity requires.");   *Thompson v. U.S. Dep't of Hous. & Urban*

---

[5] The procedural posture of this action sharply contrasts with *United States v. City of Baton Rouge*, No. 01-978-BAJ, 2012 WL 1392980 (M.D. La. April 20, 2012), relied on by Blue Water in support of its Motion.  *See* Mem. in Support at 7-8.  In *Baton Rouge*, the United States filed a notice of lodging of a proposed modification to the consent decree with the court two months **before** the citizens' groups moved to intervene.  *Id.* at *1.  The notice of lodging proposed extending the deadline for completion of sanitary sewer system improvements and was the basis for the motion to intervene.  *Id.* at *2.  Here, the only document currently before the Court is the 2002 Consent Decree.  As explained in Section B.4, motions for intervention after the entry of a consent decree are strongly discouraged and not granted absent exceptional circumstances.

*Dev.,* 404 F.3d 821, 831 (4th Cir. 2005) (same).  It is well settled in the Fourth Circuit that "[i]ntervention is ancillary and subordinate to a main cause [of action] and whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be intervention." *Black v. Cent. Motor Lines, Inc.,* 500 F.2d 407, 408 (4th Cir. 1974); *see also Houston Gen. Ins.*, 193 F.3d at 840.  Thus, where a final judgment or decree has been entered, there is no longer any pending litigation to support the application to intervene and it should be denied.  *See Black,* 500 F.2d at 408 (holding that motion to intervene was untimely when it was filed one year after judgment was entered in favor of plaintiff and "there was no pending litigation in which appellants could intervene"); *Houston Gen Ins.,* 193 F.3d at 840 (holding that a motion to intervene, filed after the entry of final judgment and after time for appeal had expired, was untimely because there was no pending litigation).

The Supreme Court has emphasized that "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.,* 321 U.S. 489, 498 (1944); *see also Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001).  In other words, "[i]ntervenors must take the pleadings in a case as they find them." *Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d. Cir. 1990); *Sw. Penn. Growth Alliance v. Browner,* 121 F.3d 106, 121 (3rd Cir. 1997).  Further, "[t]he CWA and associated case law make clear that private parties should not be allowed to hijack, via intervention - even intervention by right, a government [enforcement action]." *Lexington-Fayette*, 2007 WL 2020246, at *4; *see also Lamprecht v. FCC,* 958 F.2d 382, 389 (D.C. Cir. 1992) (intervenors "may only join issue on a matter that has been brought before the court by another party" and "cannot expand the proceedings").  Here, the existing

parties have not moved to reopen or modify the Consent Decree, nor has any dispute been presented to the Court. Therefore, the issue of modification is not currently before the Court, and Blue Water should not be allowed to expand the proceedings by raising the possibility of a modification at this time.

2. *Private Negotiations Between Existing Parties are Distinct From Pending Litigation and Do Not Provide Adequate Grounds for Intervention as of Right Under Fed. R. Civ. P. 24(a)*

Blue Water seeks intervention in an effort to "participate in . . . negotiations" over potential modification to the Consent Decree. Mem. in Support at 6. Blue Water has no right to sit at the negotiating table. Courts do not have authority to compel specific parties involved in private settlement negotiations to involve a third party, unless negotiations are taking place pursuant to a court-ordered settlement conference. *See Lexington-Fayette*, 2007 WL 2020246 at *3-4. "Parties are free to engage in settlement negotiations as they see fit, which would include the decision to exclude certain parties from the negotiations if they so choose." *Id.* at *3 (denying citizen group's motion to compel participation in settlement negotiations); *United States v. Cannons Eng'g Corp.,* 899 F.2d 79, 93 (1st Cir. 1990) ("So long as it operates in good faith, the EPA is at liberty to negotiate and settle with whomever it chooses"); *Ne. Iowa Citizens for Clean Water v. AgriProcessors, Inc.,* 469 F. Supp. 2d 666, 674 (N.D. Iowa 2006) (rejecting objections made by the citizen group intervenors that the consent decree was procedurally unfair because they were "excluded" from the settlement negotiations). Even if permitted to intervene, Blue Water would have no right to participate in negotiations between Baltimore City, the State of Maryland and the United States. Therefore, intervention should not be granted simply

because Blue Water wishes to participate in negotiations over possible modifications to the Consent Decree.[6]

As the sole parties to the Consent Decree, the United States, the State of Maryland, and Baltimore City are free to negotiate possible modifications without the involvement of citizen groups. If any modification is agreed upon by the parties and presented to the Court for approval, pursuant to 28 C.F.R. § 50.7 Blue Water will receive notice and have ample opportunity to formally voice its views regarding any proposed modifications. For this reason alone, intervention should be denied.

### 3. Courts Do Not Permit Intervention Based on A Movant's Unsupported Speculation That it May Object to Future Actions of the Existing Parties

Blue Water also seeks to intervene for the purpose of "presenting argument and evidence to the Court *if* the proposed modifications are not in the public interest." Mem. in Support at 8 (emphasis added). Fed. R. Civ. P. 24 "does not require the Court to permit intervention based upon speculation that intervention may be useful for protecting one's rights, if the need for such protection should arise at some point in the proceedings." *United States v. Microsoft Corp.*, No. Civ.A. 98-1232(CKK), 2002 WL 319784, *2 (D.D.C. Jan. 28, 2002) (denying motion to intervene as premature); *see also Flynn v. Hubbard*, 782 F.2d 1084, 1089 (1st Cir. 1986) ("It would be premature to decide now whether the interests asserted by [movants] meet the requirements of Rule 24."). There is simply no evidence that the Plaintiffs will not adequately

---

[6] The CWA "was not intended to enable citizens to commandeer the federal enforcement machinery." *DuBois v. Thomas*, 820 F.2d 943, 949 (8th Cir. 1987); *see also Gwaltney of Smithfield, Inc. v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987) (citing CWA's legislative history to show that Congress intended the Government to bring enforcement actions and to limit the role of citizen suits to that of a "supplementary" and "interstitial" nature); *United States v. Metropolitan St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992) ("Once the intervenors had an opportunity to file objections to the proposed consent decree, '[t]here is little else that they could have done.'"); *Baughman v. Bradford Coal Co.*, 592 F.2d 215, 218 (3d Cir. 1979); *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996) ("It is well settled that the right to have its objections heard does not, of course, give the intervener the right to block any settlement to which it objects") (quotations and citations omitted); *Lexington-Fayette*, 2007 WL 2020246, at *3 ("Even assuming that the Intervening Plaintiffs are permitted to intervene in this matter, this does not necessarily grant them an automatic 'seat at the table.'").

represent Blue Water's purported interest.   At this time, whether a not-yet agreed-upon modification might be at odds with the interests of Blue Water is wholly speculative.   It is possible that following negotiations, the parties will decide not to seek modification of the Consent Decree at all, or agree to propose changes that will ultimately satisfy Blue Water.   Until the parties file a notice of proposed modification of the Consent Decree with the Court, Blue Water has no way of determining whether or not its interests are protected by, or conflict with, any possible modification as required by Fed. R. Civ. P. 24(a)(2).

Given the lack of any pending issue currently before the Court, Blue Water will not be prejudiced if intervention is denied at this time.   Blue Water will have a full and fair opportunity to present its views concerning any proposed modifications to the Consent Decree *when and if* such modifications are proposed.

### 4.   Blue Water's Motion is Untimely Because It Was Filed Eleven Years After Entry of the Underlying Consent Decree

Petitions for intervention are frequently rejected as untimely when filed after the entry of final judgment in the underlying litigation.   While the entry of a consent decree or other final judgment "is not an absolute bar to filing a motion to intervene . . . [t]here is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant." *Houston Gen. Ins.,* 193 F.3d at 840 (citations omitted).   Thus, post-judgment intervention is discouraged and granted only in rare circumstances. *See, e.g., Black,* 500 F.2d at 408 (discussing the requirement of a pending suit and holding that where the action had been terminated, the motion to intervene was untimely); *Heartwood, Inc. v. United States Forest Serv., Inc.,* 316 F.3d 694, 700-01 (7th Cir. 2003) (denying intervention as of right when recreation group filed motion two weeks after approval of consent decree in environmental organizations' action against Forest Service); *United States v.*

*Associated Milk Producers, Inc.,* 534 F.2d 113, 116 (8th Cir. 1976), *cert denied, Nat'l Farmers' Org., Inc. v. United States,* 429 U.S. 940 (1976) ("[t]he general rule is that motions for intervention made *after* entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner") (emphasis original).

The cases cited by Blue Water in support of its Motion are factually distinguishable from the instant matter.  In *Patterson v. Shumate*, the proposed intervenor "filed his motion **only five days** after judgment was entered" and before the judgment at issue had been paid.  912 F.2d 463 (4th Cir. 1990) (unpublished) (emphasis added).  Therefore, the timing of the motion did not unduly prejudice the parties or the progress of the case.  *Id.*  Here, Blue Water's motion was filed almost 11 years after entry of judgment and long after Baltimore City has committed enormous resources (more than $600 million to date) to satisfy its obligations under the Consent Decree. Therefore, as discussed below, the prejudice to the existing parties of allowing intervention is significant.

> 5. *Allowing Blue Water to Intervene for the Purpose of Attempting to Participate in Settlement Negotiations Will Cause Significant Prejudice to Existing Parties*

Allowing Blue Water to intervene before any proposed modification is filed with the Court will prejudice the existing parties, causing unnecessary delay and expense.  The most important factor in determining whether a motion for intervention is untimely is the prejudice caused to the existing parties by the delay.  *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980); *see also* C. Wright & A. Miller, Timeliness of Motion, 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed.).  Prejudice to existing parties who have previously entered into a settlement is inevitable when a movant seeks belatedly to intervene and participate in that settlement.  *United States By Bell On Behalf of Marshall v. Allegheny-Ludlum Indus., Inc.,* 553 F.2d 451, 453 (5th Cir. 1977) (denying motion for intervention filed six months after implementation of consent

decrees because "[i]ntervention now for the purpose of challenging the consent agreement will prejudice the appellees by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation."); *Culbreath v. Dukaki*s, 630 F.2d 15, 22 (1st Cir. 1980) (denying intervention based on prejudice to existing parties and explaining that the purpose of the timeliness requirement "is to prevent last minute disruption of painstaking work by the parties and the court."); *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.,* 232 F.R.D. 392, 397 (D. Utah 2005) (denying private citizen's motion to intervene as of right 10 years after entry of a CERCLA consent decree based on "clear" prejudice to existing parties who had "conducted studies, negotiated and entered into contracts, designed and constructed water treatment facilities and acquired and transferred property all to accomplish the objectives of the 1995 Consent Decree.").

As in *Utah State Dep't of Health v. Kennecott Corp.*, in which a citizen moved to intervene 10 years after entry of a CERCLA consent decree, allowing Blue Water to intervene nearly 11 years after entry of the Consent Decree would greatly prejudice the existing parties. *See id*. In *Utah State Dep't of Health,* the citizen-intervenor claimed that the 1995 consent decree was "woefully inadequate" to remedy groundwater contamination. *Id.* at 394. In denying intervention, the court focused on the prejudice to existing parties which it termed "one of the most important factors in determining timeliness." *Id.* at 396 (internal quotations omitted). The court held that the proposed intervention would "greatly prejudice the existing parties" because in the 10 years since entry of the consent decree the parties "have expended significant resources and allocated and invested millions of dollars in connection with the 1995 Consent Decree." *Id.* at 397 (internal quotations omitted). Like the existing parties in *Utah State Dep't of Health,*

Baltimore City has spent millions of dollars and years of time and resources in reliance upon the Consent Decree.

As the Court no doubt well remembers, the Consent Decree requires the City to undertake an exhaustive, comprehensive investigation and rehabilitation of its wastewater collection and treatment system.  This includes, among other requirements, the elimination of SSO structured outfalls and combined sewer overflow points; years-long sewershed studies and rehabilitation of the City's major sewersheds; development of a system-wide hydraulic model; elimination of illegal sewer connections; inspection and rehabilitation of the system pumping stations, including preparation of operation and maintenance manuals for the system's largest pumping stations; development of a collection system operation and maintenance plan; development of an emergency response plan for addressing responses to SSOs; a valve inspection and repair program; and comprehensive reporting obligations detailing the progress the City has made towards fulfilling its Consent Decree obligations.  A copy of the City's most recent quarterly report submitted in July 2013 detailing the City's progress towards implementing the Consent Decree is attached as **Exhibit 2.**

The Consent Decree was the product of intense, expensive, and lengthy negotiations between federal, state and local officials.  The parties reached agreement in early 2002, and the Consent Decree was approved by this Court.  For more than a decade, the parties have worked cooperatively and have avoided litigation as the City has committed significant time, money, and other resources into implementing the Consent Decree.  If Blue Water is permitted to intervene now, the parties will need to respond to Blue Water's complaint, diverting the governments' (and taxpayers') limited resources away from implementing the terms of the Consent Decree.  The time and money spent on litigation will be wasted if the parties ultimately determine not to

modify the Consent Decree, or if Blue Water later determines that any modification proposed by the United States adequately protects its interest.[7]  Moreover, if allowed to intervene now, and if the Consent Decree is ultimately modified, Blue Water will undoubtedly seek attorney's fees and other litigation costs as an alleged "prevailing or substantially prevailing party" under CWA § 1365(d) from the point of intervention.  To fund the Consent Decree, the City has over the past decade significantly raised wastewater utility rates, which has posed a particular burden on low- and fixed-income City residents.  *See* **Exhibit 3**, Affidavit of Lorenzo L. Garrett of DPW Bureau of Water and Wastewater.  With the exception of 2008, wastewater utility rates have increased by at least nine (9) percent every year since the entry of the 2002 Consent Decree.[8]  *See id*. at 2. Every dollar spent by the City litigating with Blue Water will ultimately be borne by City taxpayers.

### C.  Intervention under Rule 24(a)(2)  and (b) Should Be Denied

> *1.  Intervention as of Right under Rule 24(a)(2) Should Be Denied Because the Motion is Untimely and Blue Water Cannot Show That Its Interests Are Not Adequately Represented by Existing Plaintiffs*

In addition to being untimely, Blue Water has failed to identify interests that are not adequately represented by Plaintiffs.  Blue Water bears the burden of establishing a lack of adequate representation by existing parties.  *See United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 474 (4th Cir. 1987).  Blue Water must "produce something more than speculation as to the purported inadequacy" of representation.  *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) (*quoting Moosehead Sanitary Dist. v. S. G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir. 1979)).  Fed. R. Civ. P. 24 "does not require the Court to

---

[7] Baltimore City Department of Public Works staff recently expended considerable time and effort in responding to Blue Water's February 28, 2013 Letter to EPA Region III.

[8] The Board of Estimates recently approved a three (3) year wastewater utility rate increase package.  Rates increased by 15 percent in July 2013, and will increase by 11 percent in both July 2014 and July 2015.  *See* Exhibit 3, Affidavit of Lorenzo Garrett at 1.

permit intervention based upon speculation that intervention may be useful for protecting one's rights, if the need for such protection should arise at some point in the proceedings." *Microsoft Corp.*, 2002 WL 319784, at *2.

Blue Water fails to provide anything more than mere speculation as to the purported inadequate representation. Blue Water's purported interest -- ensuring enforcement of the City's compliance with the Consent Decree – is shared by Plaintiffs. *See* Motion at 2. There is simply no evidence that the Plaintiffs will not continue to adequately represent Blue Water's purported interest. As recently as February 28, 2013, Blue Water submitted an 80-page document to EPA outlining its concerns regarding the Consent Decree. *See* Exhibit D to Blue Water's Complaint in Intervention ("Compl."). The parties have been diligent in evaluating and responding to all concerns raised by Blue Water regarding the City's compliance with the Consent Decree. EPA requested that the City respond to the concerns raised by Blue Water and the City fully responded. Unless and until the parties file a notice of proposed modification of the Consent Decree with the Court, it is impossible to know whether Blue Water's interests might be adequately addressed by the modification. Therefore, Blue Water's request for intervention under Fed. R. Civ. P. 24(a)(2) should be denied.

> 2. *Permissive Intervention under Rule 24(b) Should Be Denied Because the Broad Scope of the Proposed Intervention Would Substantially Prejudice the Existing Parties*

Movant's request for permissive intervention should also be denied because its Motion is untimely and its participation will delay and prejudice the existing parties. *See Spring Constr. Co.*, 614 F.2d at 377. Fed. R. Civ. P. 24(b)(1)(B) provides that intervention is appropriate when the movants' claims share a common question of law or fact with the claims in the case. The Court also must consider whether the intervenors' interests are adequately represented by other parties, and whether intervention will unduly delay the proceedings or prejudice existing parties.

Fed. R. Civ. P. 24(b)(3); *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013) (affirming lower court's denial of permissive intervention because adding intervenors "would necessarily complicate the discovery process and consume additional resources of the court and the parties"). Trial courts have considerable discretion in determining whether to permit intervention. *See Brink*, 667 F.2d at 428. For the reasons stated in the prior sections, permissive intervention is not appropriate at this time.

The Court's role in approving and entering a Consent Decree is not to fashion the appropriate relief, but rather to defer to agency expertise. *Cannons Eng'g Corp.*, 899 F.2d at 84. Here, Blue Water's requested relief exceeds the bounds of what this Court is permitted to provide. Compl. at ¶ 40 (requesting that the Court "modify the 2002 Consent Decree to address the lack of compliance and enforcement of the City of Baltimore's obligations"). The court does not have the power to modify a consent decree after it has been signed by the parties; it may only accept or reject the document as a whole. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *United States v. Jones & Laughlin Steel Corp.,* 804 F.2d 348, 351 (6th Cir. 1986). As Blue Water was not a party to the Consent Decree, it should not now be permitted to intervene in order to challenge whether Baltimore City is in compliance.

Although Blue Water complains that there continue to be sewer overflows, the Consent Decree explicitly recognizes that overflows would continue to occur over the years as investigation and renovation of the sewer system proceeds, and the Consent Decree expressly provides for stipulated penalties for those overflows. Consent Decree at ¶ 23. Thus, there is already in place a stipulated and judicially-ordered remedy for the overflows that concern Blue Water. Obviously there would be severe prejudice to the City to have to re-litigate issues and

complaints raised by Blue Water, for which there is already a remedy and for which the City is already being punished pursuant to Consent Decree paragraph 23.

## CONCLUSION

The existing Parties have not proposed any modifications to the Consent Decree and therefore intervention is premature at this time.  Blue Water will suffer no injury or prejudice if the Court were to deny its Motion without prejudice.  If the Parties reach agreement on a modification to the Consent Decree, any proposed modification will be presented to the Court for approval, and Blue Water will receive notice and have the opportunity to comment. Accordingly, the Motion should be denied.


Respectfully submitted,

GEORGE NILSON
City Solicitor
Baltimore City Law Dept.
100 N. Holiday St., Suite 101
Baltimore, MD  21202
Phone: 410-396-3297


| _____/s/_____ | _____/s/_____ |
|---|---|
| Peter E. Keith | Thomas M. Lingan |
| Federal Bar No. 01983 | Federal Bar No. 08894 |
| Gallagher Evelius and Jones LLP | Venable LLP |
| 218 N Charles St., Suite 400 | 750 E. Pratt Street, Suite 900 |
| Baltimore, MD  21201 | Baltimore, MD  21202 |
| Phone:410-727-7702 | (410) 244-7400 |
| Fax: 410-468-2786 | (410) 244-7742 – facsimile |
| pkeith@gejlaw.com | tmlingan@venable.com |

*Counsel for Mayor and City Council of Baltimore*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of August, 2013, the foregoing Response to Motion

for Leave to Intervene was served on the following via ECF:

**On Behalf of the United States:**

Cara M. Mroczek
United States Department of Justice
Environmental and Natural Resources Div.
Ben Franklin Station, PO Box 7611
Washington, DC  20044
Phone: 202-514-1447
Fax: 202-616-6583
cara.mroczek@usdoj.gov

P Michael Cunningham
Office of the United States Attorney
36 S Charles St., 4th Fl.
Baltimore, MD  21201
Phone: 410-209-4884
Fax: 410-962-3091
michael.cunningham@usdoj.gov

**On Behalf of the State of Maryland:**

Emily A. Vainieri                               Nancy Young
Office of the Attorney General                  Office of the Attorney General
Maryland Dep't. of the Environment              Maryland Dep't. of the Environment
1800 Washington Blvd., Suite 6048               1800 Washington Boulevard
Baltimore, MD  21230                            Baltimore, MD 21230-1718
Phone: 410-537-3954                             Phone: 410-537-3042
Emily.vainieri@maryland.gov                     nyoung@mde.state.md

**On Behalf of Blue Water Baltimore:**

Theodore L. Garrett                             Thomas R. Brugato
Covington and Burling LLP                       Covington and Burling LLP
1201 Pennsylvania Ave., NW                      1201 Pennsylvania Ave., NW
Washington, DC  20004                           Washington, DC  20004
Phone: 202-662-5398                             Phone: 202-662-5515
Fax: 202-778-5398                               Fax: 202-778-5515
tgarrett@cov.com                                tbrugato@cov.com

Patrick M. Phelan
Covington and Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Phone: 202-662-6000
Fax: 202-662-6291
pphelan@cov.com

**On Behalf of Mayor and City Council of Baltimore, Maryland:**

George Nilson
City Solicitor
Baltimore City Law Dept.
100 N. Holiday St., Suite 101
Baltimore, MD  21202
Phone: 410-396-3297

Peter E. Keith
Gallagher Evelius and Jones LLP
218 N Charles St., Suite 400
Baltimore, MD  21201
Phone:410-727-7702
Fax: 410-468-2786
pkeith@gejlaw.com

_____/s/_____
Thomas M. Lingan