UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | ) | Civil Action No. JFM-02-1524 |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| BLUE WATER BALTIMORE, | ) | |
| | ) | |
| Applicant for Intervention, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MAYOR AND CITY COUNCIL OF | ) | |
| BALTIMORE, MARYLAND, | ) | |
| | ) | |
| Defendant. | ) | |

**BLUE WATER BALTIMORE'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
ITS MOTION TO INTERVENE**

As explained in Blue Water Baltimore's opening brief, intervention in this action is

appropriate under Federal Rule of Civil Procedure 24(a) and 24(b)(1).  *See* Memorandum in

Support of Blue Water Baltimore's Motion to Intervene (Rec. Doc. 5-1).

Neither Plaintiffs nor Defendant contests the applicability of the statutory right to

intervene under the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B).  *See* Plaintiffs' Memorandum

in Response to the Motion of Blue Water Baltimore for Leave to Intervene, at 6 (Rec. Doc. 17)

(hereinafter "Pls.' Br.") (acknowledging the statutory right to intervene but arguing the motion to

intervene is untimely); Defendant Mayor & City Council of Baltimore's response to Motion for

Leave to Intervene, at 4 (Rec. Doc. 18) (hereinafter "Def.'s Br.") (same).  Instead, they raise two sets of objections to Blue Water Baltimore's motion.

The primary objection is that the motion to intervene is untimely.  However, the cases relied on for that proposition are inapposite: in each of those cases, the proposed intervenor's motion was found untimely because the intervenor sought to challenge the terms of a previously approved Consent Decree.

Here, by contrast, Blue Water Baltimore does not seek to challenge the existing Consent Decree.  Rather, Blue Water Baltimore seeks to intervene to (1) ensure adequate enforcement of the existing decree and (2) to present evidence and argument regarding any proposed modifications to the decree.  As set forth in Blue Water Baltimore's opening brief and Complaint in Intervention, the City of Baltimore has failed to comply with a number of requirements contained in the 2002 Consent Decree, and Plaintiffs have failed to adequately enforce the decree.  Moreover, the City and the Plaintiffs are in widely-publicized negotiations over modifications to the Consent Decree.  Blue Water Baltimore's motion to intervene is therefore timely.

Plaintiffs and Defendant raise a number of other arguments in opposition to intervention: that the Court is without jurisdiction to permit intervention, that Blue Water Baltimore does not have standing to intervene, and that Plaintiffs adequately represent Blue Water Baltimore's interest.  These arguments are contrary to well-established case law and are without merit.  Accordingly, the Court should grant Blue Water Baltimore's motion to intervene.

## ARGUMENT

### I.      Blue Water Baltimore's Motion is Timely.

Blue Water Baltimore's motion to intervene is timely for two basic reasons.  First, much of Blue Water Baltimore's reason for intervening is due to Plaintiffs' failure to adequately

enforce the Consent Decree.  Second, Plaintiffs and the City of Baltimore are engaged in widely
publicized discussions over modifications to the Consent Decree.

### A.      Lack of Enforcement of the Consent Decree.

Plaintiffs suggest that the Consent Decree recognized that Baltimore would continue to
violate the Clean Water Act while the Consent Decree is being implemented, given that the
Consent Decree scheduled actions through 2016.  Pls.' Br. at 3.  This contention is contrary to
express provisions of the Consent Decree.  Consent Decree ¶ 8 ("Baltimore shall comply at all
times with the Clean Water Act and the regulations promulgated thereunder . . . .").[1]  Moreover,
neither Plaintiffs nor the City of Baltimore disputes that, if there were substantial noncompliance
with the Consent Decree, intervention would be timely.  The Consent Decree does not
contemplate or permit ongoing violation of its own provisions.[2]

---

[1]   *See also* Consent Decree ¶ 49 ("Nothing herein shall be construed as relieving Baltimore of
the duty to comply with the Clean Water Act, the Maryland water pollution control laws, the
regulations promulgated under those acts, and all applicable permits issued under those acts and
regulations."); *id.* ¶ 50 ("Baltimore shall remain solely responsible for any non-compliance with
the terms of this Consent Decree, all applicable permits, the Clean Water Act and regulations
promulgated under that Act."); *id.* ¶ 54 ("This Consent Decree in no way affects or relieves
Baltimore of any responsibility to comply with any federal, state or local law or regulation."); *id.*
¶ 55 ("The Parties agree that Baltimore is responsible for achieving and maintaining complete
compliance with all applicable federal and state laws, regulations, and permits, and that
compliance with this Consent Decree shall be no defense to any actions commenced pursuant to
said laws, regulations, or permits, except as otherwise expressly specified in the Consent
Decree.").

[2] *See* Consent Decree ¶ 23 ("Baltimore shall pay stipulated penalties to the United States and the
State of Maryland as specified in this Paragraph 23 for its failure to comply with the
requirements of Paragraphs 8 through 17 of the Consent Decree."); *id.* ¶ 25 ("Payment of
stipulated penalties shall be in addition to any other rights or remedies which may be available
. . . by reason of Baltimore's failure to comply with the requirements of this Consent Decree and
all applicable federal, state or local laws, regulations, wastewater discharge permit(s) and all
other applicable permits."); *id.* ¶ 35(A) (reserving the right to bring all "[c]laims based on a
failure by Baltimore to meet a requirement of this Consent Decree"); *id.* ¶ 50.

Rather, Plaintiffs and Defendant assert that there is no such noncompliance.  *See* Pls.' Br. at 10 (arguing that "the overflows and incidents listed in the Proposed Complaint in Intervention are not evidence of significant noncompliance by the City"); Def.'s Br. at 4 (disagreeing that there is a history of noncompliance).  These arguments are misplaced: there is clear and substantial evidence of noncompliance with the Consent Decree.

First, the City has failed to eliminate two Sanitary Sewer Overflow (SSO) structures as required by the Consent Decree.  These structures discharge millions of gallons of sewage each year.  The Consent Decree requires the City of Baltimore to "eliminate Sanitary Sewer Overflows . . . through development and implementation of the measures set forth in Paragraphs 8 through 15."  Consent Decree ¶ 8(A).  Those measures include a requirement that the City "eliminate the . . . Sanitary Sewer Overflow structures identified in Appendices A and C no later than the milestone dates specified in Appendix D for the elimination of such structures."  Consent Decree ¶ 8(B).

The City has failed to comply with the requirement to eliminate structures 67 and 72.  Both are structures that discharge into the Jones Falls and were identified as structures to be removed in Appendix C.  Consent Decree App'x C.  The City of Baltimore was required to remove structure 67 by June 30, 2007, and structure 72 by June 30, 2008.  Consent Decree App'x D.

However, the City has not removed these two structures.  Instead, it has submitted multiple requests to EPA for an extension of the deadline.  Most recently, in February 2011, the City requested an extension of the deadline to remove structures 67 and 72 until June 29, 2019.  *See* Compl. in Intervention, Ex. D, App'x II at 2; *see also* Declaration of David Flores ("Flores Decl.") Ex. 4 (attached hereto as Exhibit A) (Letter from Rudolph S. Chow, City of Baltimore

Department of Public Works, to Michelle Price-Fey, NPDES Enforcement Branch, EPA (Feb. 15, 2011).  However, EPA has neither approved the extension request nor assessed stipulated penalties for failure to meet the deadline.  Flores Decl. ¶ 14.  In the meantime these two structures, in particular structure 67, continue to discharge substantial volumes of untreated sewage.  *See* Flores Decl. ¶ 12 (explaining that structure 67 "discharged untreated sewage mixed with stormwater seven times during 2012 with an average flow rate of 6.78 million gallons per day and a maximum flow rate of 13.53 million gallons per day"); Compl. in Intervention, Ex. D, App'x II at 2.

Second, the City has substantially underreported the volume of sanitary sewer overflows (SSOs).  The City is required to file a written report within five days of the time the City becomes aware of "any unauthorized discharge of wastewater" from the sewage system.  Consent Decree ¶ 17(A).  Such a written report must contain a variety of information, including the "volume (estimate if unknown)" of the discharge.  Consent Decree ¶ 17(A)(i).

Between October 28 and October 31, 2012, between 800,000 and one million gallons of sewage discharged from two Herring Run sewer stacks.  Compl. in Intervention, Ex. D, App'x V at 1; Declaration of Thayer Young ("Young Decl.") ¶ 15 (attached hereto as Exhibit B).  The City reported an estimate of 8,100 gallons of total sewage loss, which, spread across the duration of the overflow, is roughly equivalent to the flow rate from a standard drinking water fountain. Compl. in Intervention, Ex. D, App'x V at 1; Young Decl. ¶¶ 17-18.  Evidence collected by Blue Water Baltimore, including photo and video documentation and eyewitness statements, demonstrates that the volume was significantly greater than that reported by the City.  Compl. in Intervention, Ex. D, App'x V at 1; Young Decl. ¶ 19.  The City has not provided any correction of its inaccurate volume estimates or any explanation as to how those estimates could be so far

5

off the mark.

Plaintiffs dismiss this example as misplaced, given the strains that the City of Baltimore was under at the time due to Hurricane Sandy. Pls.' Br. at 10. However, the volume reporting obligation is not one that should have been impacted by Hurricane Sandy – neither the City nor Plaintiffs have explained why a hurricane event should lead to drastic underestimates of the overflow volume. Accurate volume estimates are needed to assess the City's compliance with the Consent Decree and to provide information to the public regarding sewage discharges. Moreover, if the volume exceeds 10,000 gallons, the City is required to notify additional officials and to conduct sampling. Department of Public Works, *Sanitary Sewer Overflow Standard Operation Procedure* § 2 (Nov. 28, 2012) (attached as Exhibit 3 to the Flores Declaration).

Third, the City has responded inadequately to sewage overflows along the Jones Falls along a pedestrian pathway on Falls Road. While one instance of such a discharge took place during Hurricane Sandy, there are also more recent instances of such overflows which did not take place during the storm. For instance, in June 2013 an overflow took place and similar to the event during Hurricane Sandy, the City failed to rope off the area from the public and clean up the wastewater debris. *See* Blue Water Baltimore, *SSOs at Falls Road & Street Car Museum Fact Sheet* (July 8, 2013) (attached as Exhibit 1 to the Flores Declaration). On June 11, the City reported that the wastewater debris had been cleaned up. *Id.* However, Blue Water Baltimore has documented that the site was in fact not adequately cleaned up on June 14 and again on June 19. *Id.* This pathway is used by the public for walking, running, and biking, and wastewater debris covered the path, presenting a public health issue. *Id.*

This is a violation of the Consent Decree. The City of Baltimore's Standard Operating Procedures require a thorough cleanup of an SSO site, including a removal of all debris. *See*

Flores Decl. Ex. 3 § 4.  These procedures are a part of the City's Emergency Response Plan, which the Consent Decree required the City to draft and submit to Plaintiffs for approval. Consent Decree ¶ 16(C).  Upon approval, the Plan was "incorporated into, and . . . enforceable under, this Consent Decree."  *Id.*

Fourth, the City failed to post adequate signage or clean up wastewater debris during another non-Hurricane Sandy overflow event at Gwynns Falls in June 2013.  On June 6 and June 11, 2013, a Blue Water Baltimore volunteer observed and reported to the City overflow events at Gwynns Falls Park.  *See* Blue Water Baltimore, *SSOs into Gwynns Falls Stream Fact Sheet* (June 2013) (attached as Exhibit 2 to the Flores Declaration).  This area was not cordoned off from the public.  *Id.*  This is a violation of the Consent Decree, as the Emergency Response Plan requires "[t]he SSO location and the surrounding area" to be "cordoned off from the public . . . with cones and/or yellow caution tape" due to health concerns if the public were to come into contact with such sewage.  Flores Decl. Ex. 3 § 3.5.

These failures of enforcement establish that Blue Water Baltimore's motion is timely.  As was the case in *City of Baton Rouge*, "the need to intervene arises from the failure of the plaintiffs to enforce compliance with the terms of the Consent Decree, and the failure to bring enforcement actions against the defendants for repeated violations of the Consent Decree." *United States v. City of Baton Rouge*, No. 01-978, 2012 U.S. Dist. LEXIS 55671, at *4 (M.D. La. Apr. 20, 2012).

Beyond generic invocations of prejudice, neither Plaintiffs nor Defendant has identified any specific prejudice other than the expenditure of time and money in litigation.  *See* Def.'s Br. at 14-15.  This case is wholly distinguishable from *Utah v. Kennecott Corp.*, 232 F.R.D. 392 (D. Utah 2005), where the intervenor sought to intervene ten years after the consent decree was

entered in order to request that the "Consent Decree be set aside as void." *Id.* at 394.  Blue

Water Baltimore does not seek to void the Consent Decree or otherwise undo the existing

requirements of the decree.  Instead, Blue Water Baltimore seeks to ensure that the Consent

Decree is adequately enforced and that any proposed modifications are in the public interest.  No

reliance interest would be adversely effected if Blue Water Baltimore were to intervene.[3]

Further, adopting the position of Plaintiffs and Defendant would result in a greater and

unnecessary expenditure of judicial and government resources in the long run.  Under Plaintiffs'

and Defendant's approach, any citizen groups or other potentially interested parties would be

required to intervene in the underlying litigation prior to entry of a consent decree merely to

preserve their right to ensure adequate enforcement of the decree in the future – even if such

groups had no objection to the terms of the decree itself.[4]  *Cf. Sierra Club v. Espy*, 18 F.3d 1202,

1206 (5th Cir. 1994) ("Courts should discourage premature intervention that wastes judicial

---

[3] For this reason, the other cases Defendant relies on to establish prejudice are likewise inapposite.  In each case cited by Defendants the proposed intervenor sought to void the consent decree at issue.  *See Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 700 (7th Cir. 2003) (finding intervention after the entry of a consent decree untimely where the purpose of the intervention "is to contest the consent decree on the merits"); *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980) (denying intervention where the intervenors sought to "oppose" certain provisions of the consent decree and explaining that "there is a distinct probability that the intervention of the unions will destroy the consent decree and force a trial on the merits"); *United States ex rel. Bell v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 452 n.2 & 453 (5th Cir. 1977) (per curiam) (noting that "[t]he present applicants seek to void Consent Decree" and finding that "[i]ntervention now *for the purpose of challenging the consent agreement* will prejudice the appellees by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation" (emphasis added)); *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 115 (8th Cir. 1976) (finding intervention after the entry of a consent decree untimely where the proposed intervenor "objected to the proposed decree" and then sought to intervene).

[4] It is clear that parties to the underlying litigation, even if not signatories to a consent decree, may request judicial enforcement of the decree.  *Sierra Club v. Hamilton County Bd. of Cnty. Comm'rs*, 504 F.3d 634, 644 (6th Cir. 2007) ("[A]lthough the Sierra Club was not a party to the consent decree, as an intervening party in the underlying litigation, it can inform the Court of unenforced violations of the Consent Decree and request that the Court enforce the terms of the decrees and this Court's Order." (quotation marks omitted)).

resources."). The better rule would permit intervention after entry of the decree for purposes of enforcing that decree, so long as the intervenor did not seek to challenge or overturn any provisions of the decree itself.

### B.      The Parties Will Likely Seek to Modify the Consent Decree.

Blue Water Baltimore's motion to intervene is also timely because the parties to the Consent Decree are likely to seek modification of the decree in the near future. As explained in Plaintiff-Intervenor's opening brief, a May 30, 2013 local newspaper article widely publicized the ongoing negotiations between EPA, MDE, and the City of Baltimore regarding modification of the Consent Decree.[5] Further, as discussed above, the City has requested an extension until 2019 of the deadline to remove structures 67 and 72, which has been pending for over two years. Such a modification of the deadlines in the decree would require this Court's approval, as Plaintiffs appear to recognize. *See* Pls.' Br. at 10 ("The Plaintiffs are required to publish any material modification for notice and comment." (citing Consent Decree ¶ 69)).

Plaintiffs and Defendant argue that a likely modification is not a sufficient basis to permit intervention. Pls.' Br. at 8; Def.'s Br. at 7. But neither Plaintiffs nor Defendant can specify any actual prejudice that would result from such intervention. Further, Blue Water Baltimore does not seek to propose modifications to the decree in the absence of proposed modifications by Plaintiffs or Defendant. That said, should Plaintiffs or Defendant propose to modify the decree, and thereby weaken its protections, Blue Water Baltimore reserves the right to suggest additional modifications, to protect the public interest in eliminating unlawful sewage discharges in the City

---

[5] *See* Mark Reutter, *EPA Tentatively Agrees to Revise Consent Decree, Lowering City's Costs By $500 Million*, Baltimore Brew (May 30, 2013), *available at* http://www.baltimorebrew.com/2013/05/30/baltimore-renegotiates-epa-consent-decree-lowering-its-costs-by-500000/.

of Baltimore and to offset any weakening of the Consent Decree proposed by Plaintiffs or

Defendant.

Moreover, allowing Blue Water Baltimore to intervene now, rather than only after

modifications are proposed, would reduce the likelihood of delay in the Court acting upon such

proposed modifications.  The regulations requiring a period for public comment on a proposed

consent decree require only 30 days between the proposal of a decree and its entry by the court.

*See* 28 C.F.R. § 50.7(b) (providing that a "proposed judgment" be lodged with the court "at least

30 days before the judgment is entered by the court").[6]  If intervention is delayed until a

proposed modification has actually been filed with the Court, it would almost certainly take

longer than 30 days to intervene, raise any substantive objections to the modifications, and have

the court rule on such objections.[7]

---

[6] Defendant also suggests that the public comment period provides Blue Water Baltimore "ample opportunity to formally voice its views regarding any proposed modifications."  Def.'s Br. at 10. Blue Water Baltimore respectfully disagrees – the ability to submit such comments is not an adequate substitute for intervention.  *See United States v. Albert Inv. Co.*, 585 F.3d 1386, 1398-99 (10th Cir. 2009) ("The notice-and-comment mechanism is not an adequate substitute for intervention, contrary to the government's claims. . . .  [T]he government is free to ignore the comments because the notice-and-comment mechanism is not statutorily mandated.  The district court may also disregard [the proposed intervenor's] comments in the absence of any requirement to consider them or any appellate review of the court's consideration of comments. The failure to consider adequately an intervenor's objections, on the other hand, is subject to appellate review.").

[7] Blue Water Baltimore appreciates Plaintiffs' acknowledgement that "the sewage discharges through storm water," which are not covered under the existing Consent Decree, "are a public health and water quality concern."  Pls.' Br. at 13 n.2.  Unfortunately, current efforts to address such discharges have proven inadequate.  Recent studies have found that sewage discharges through storm water in Baltimore have caused substantial pollution, and that Baltimore Harbor has shown "little or no improvement in bacterial loading."  Lilly et al., *Pollution Loading from Illicit Sewage Discharges in Two Mid-Atlantic Subwatersheds and Implications for Nutrient and Bacterial Total Maximum Daily Loads*, Watershed Science Bulletin, no. 1, Spring 2012, at 9, *available at*  http://www.cwp.org/images/stories/Images/wsb/wsbpdf/WSBsp12.pdf.

**II.     The Parties' Other Arguments in Opposition to Blue Water Baltimore's Motion Are Without Merit.**

**A.     The Court Has Jurisdiction to Permit Intervention.**

Plaintiffs and Defendant argue that the Court lacks jurisdiction over the motion to intervene. Pls.' Br. at 13-14, Def.'s Br. at 8.  This argument is contrary to both the express terms of the Consent Decree and well-established principles of federal-court jurisdiction to enforce or modify consent decrees.

The Consent Decree itself provides:

> This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree *and* for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, to the extent that this Consent Decree provides for resolution of disputes by the Court.

Consent Decree ¶ 40 (emphasis added).

Plaintiffs' argument ignores the first clause of this paragraph – that the Court expressly retained jurisdiction "for the purposes of implementing and enforcing the terms and conditions" of the Consent Decree.  Blue Water Baltimore's motion to intervene seeks more thorough enforcement of the Consent Decree and relates to the implementation of its decree.

In any event, the Court retains inherent authority to enforce the terms of the decree, and to modify the decree, regardless of the language of the decree.  The Supreme Court and Fourth Circuit have rejected the argument "that a decree entered upon consent is to be treated as a contract and not as a judicial act," and instead held that courts have "inherent power to modify . . . consent decrees," because such decrees "regulate future conduct and thus operate as injunctions."  *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825-26 (4th Cir. 2005) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932)); *Johnson v. Robinson*, 987 F.2d 1043, 1050 (4th Cir. 1993) ("[A] district court may, of course, modify a consent decree

to impose new duties upon a party . . . .").[8]

Likewise, "[a] district court retains jurisdiction to enforce its judgments, including consent decrees." *Thompson*, 404 F.3d at 833 (quoting *Hook v. Arizona Dep't of Corr.*, 972 F.3d 1012, 1014 (9th Cir. 1992)).[9]

Because a court inherently retains jurisdiction to modify and enforce a consent decree, Plaintiffs' and Defendant's argument that the motion to intervene should be denied because the action has already concluded is misplaced. Pls.' Br. at 11-13; Def.'s Br. at 8-9. It is well-settled that "[t]he entry of a consent decree does not 'kill' a case or terminate the district court's jurisdiction." *Alberti v. Klevenhagen*, 46 F.3d 1347, 1365 (5th Cir. 1995) (quoting *In re Pearson*, 990 F.2d 653, 657 (1st Cir. 1993)).

---

[8] *See also, e.g.*, *Hodge v. Dep't of Hous. & Urban Dev.*, 862 F.2d 859, 861-62 (11th Cir. 1989) ("Inherent in the jurisdiction of a court of equity is the power to modify an injunction in adaptation to changed conditions, though it was entered by consent. It matters not whether, as here, the court by the terms of its order reserves the power to revoke or modify it." (citation and quotation marks omitted)); *Lasky v. Cont'l Prods. Corp.*, 804 F.2d 250, 254 (3d Cir. 1986) ("The power of a court to enter a consent decree emanates from its authority to adjudicate the rights of the parties in the first instance. The authority thereafter to modify the consent decree similarly derives directly from the court's initial exercise of jurisdiction over the dispute. Put otherwise, a court has inherent power to modify a consent decree that it initially had the power to approve."); *Keith v. Volpe*, 784 F.2d 1457, 1461 (9th Cir. 1986) ("[E]ven in the absence of express authorization in the decree or request from the parties, the power to modify in appropriate circumstances is inherent in the equity jurisdiction of the court.").

Accordingly, Defendant's arguments that the court "does not have the power to modify a consent decree," and that "[t]he Court's role in approving and entering a Consent Decree is not to fashion the appropriate relief, but rather to defer to agency expertise," are incorrect. Def.'s Br. at 17.

[9] *See also, e.g.*, *Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced."); *City of Las Vegas v. Clark County*, 755 F.2d 697, 701 (9th Cir. 1985) ("The district court retains jurisdiction to enforce its judgments. If the complaint properly alleged violation of the Consent Decree, the district court had jurisdiction." (citation omitted)).

**B.     Blue Water Baltimore Has Demonstrated Standing to Intervene.**

Plaintiffs argue that Blue Water Baltimore lacks standing to intervene.  Pls.' Br. at 11-13.
In actuality, this is not a standing argument, but a different way to present the lack of jurisdiction
argument discussed above: Plaintiffs argue that because an intervenor cannot broaden the scope
of the suit, and the suit has concluded, Blue Water Baltimore does not have standing to
intervene.

Neither Plaintiffs nor Defendant disputes any of the arguments set forth in Blue Water
Baltimore's opening brief as to why it has satisfied the elements of Article III standing: its
members have suffered, and will suffer, continuing harm as a result of sewage discharges which
violate both the Clean Water Act and the terms of the Consent Decree.  This case is wholly
unlike *Dillard v. Chilton County Commission*, 495 F.3d 1324 (11th Cir. 2007) (per curiam),
relied on by Plaintiffs, where the proposed intervenors challenged a consent decree not on the
basis of any adverse impacts to them, but only on the basis that "that the law . . . has not been
followed," which is a grievance insufficient to support standing.  *Id.* at 1335.  In sharp contrast,
Blue Water Baltimore has set forth uncontroverted evidence as to its Article III standing.[10]

**C.     Plaintiffs Do Not Adequately Represent Blue Water Baltimore's Interest.**

Both Plaintiffs and Defendant argue, relying almost entirely on cases from outside of the
Fourth Circuit, that intervention is unnecessary because Plaintiffs adequately represent Blue
Water Baltimore's interests.  Pls.' Br. at 8-11; Def.'s Br. at 15-16.

To begin with, this argument is irrelevant to the primary basis Blue Water Baltimore
advances for intervention – its statutory right to intervene under Rule 24(a)(1) and the Clean

---

[10]  In fact, *Dillard* supports permitting intervention here.  *Dillard* explained that a proposed
intervenor that demonstrates its own Article III standing may "challenge the settlement" between
the original parties to the lawsuit.  *Dillard*, 495 F.3d at 1336.

Water Act.  Blue Water Baltimore need show inadequacy of representation only to intervene under Rules 24(a)(2) and (b)(1).  Because the statutory right to intervene applies here, the Court need not address intervention under Rules 24(a)(2) and (b)(1).

In any event, Blue Water Baltimore has demonstrated inadequate representation.  As explained in Blue Water Baltimore's opening brief, in the Fourth Circuit the burden of demonstrating inadequate representation is "minimal," *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981) (quoting *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972)), and is satisfied if the representation "may be" inadequate, *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991).

Here, this requirement is satisfied, both because the Plaintiffs and Blue Water Baltimore represent different interests and because of Plaintiffs' insufficient enforcement of the Consent Decree.  *See* Memorandum in Support of Blue Water Baltimore's Motion to Intervene at 13.

## III.    The Scope of Intervention Should Not Be Limited.

The Court should not limit the scope of Blue Water Baltimore's intervention.[11]  It is far from clear that such limitations are permissible where intervention is as of right.  *See United States v. Arch Coal, Inc.*, No. 11-0133, 2011 U.S. Dist. LEXIS 66789, at *35-38 (S.D. W. Va.

---

[11]   In the absence of limiting conditions on the scope of intervention, the "general rule" is that "the intervenor is treated as if he were an original party" to the suit.  *Montcalm Publ'g Corp. v. Virginia*, 199 F.3d 168, 172 (4th Cir. 1999) (quoting 7C Charles Alan Wright et al., *Federal Practice & Procedure* § 1920 (2d ed. 1986)); *see also, e.g.*, *In re: Ford Motor Co.*, 471 F.3d 1233, 1246 (11th Cir. 2006) ("Once a court grants intervention, whether of right or by permission, the 'intervenor is treated as if [it] were an original party and has equal standing with the original parties.'" (alteration in original) (quoting *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir. 1978) (per curiam))); *Alvarado v. J.C. Penny Co.*, 997 F.2d 803, 805 (10th Cir. 1993) ("[W]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." (quoting *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985))).

June 22, 2011) (explaining that "some courts have imposed conditions upon intervenors of right such as the citizen organizations here.  The propriety of that course of action has been the subject of some debate," and remarking that "[t]he leading commentators on the Federal Rules of Civil Procedure, however, take a dim view of the" court's authority to impose such limitations (citing Wright & Miller, *Federal Practice & Procedur*e § 1922 (3d ed. 2011)).

In any event, the Court should reject Plaintiffs' proposed limitation, which is really "just an offer to let the proposed intervenors file a memorandum, and perhaps present oral argument should the court request it." *City of Baton Rouge*, 2012 U.S. Dist. LEXIS at *8.  Participation by citizen groups in the Consent Decree process is an important aspect of the Clean Water Act.  As the Fourth Circuit has explained, "[c]ritical to the enforcement of the Clean Water Act is the citizen suit provision found in section 505," which includes the provision granting citizens a statutory right to intervene.  *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 152 (4th Cir. 2000) (en banc).  Indeed, Congress enacted the Clean Water Act's citizen suit provision in response to "inadequate recognition on the part of the administrative agencies as to the proper role of the public," and sought "to open wide the opportunities for the public to participate in a meaningful way in the decisions of government."  H.R. Rep. No. 92-911, at 132 (1972).  Given the importance of citizen participation to the Clean Water Act, this Court should not impose unnecessary limitations on the scope of Blue Water Baltimore's intervention.[12]

---

[12] Blue Water Baltimore does agree with Plaintiffs that, if the Court grants its motion to intervene, Blue Water Baltimore's status as a party would not enable it to prevent modification of the decree simply because it does not consent to such a modification.  *Local No. 93 v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("[W]hile an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.").

## CONCLUSION

For the foregoing reasons, and those stated in the Memorandum in Support of Blue Water

Baltimore's Motion to Intervene, the Motion to Intervene should be granted.

Respectfully submitted,

Dated:  September 27, 2013

  /s/ Patrick M. Phelan
Theodore L. Garrett, *pro hac vice*
Patrick M. Phelan
Federal Bar No. 29283
Thomas R. Brugato, *pro hac vice*
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 662-6000
Fax: (202) 778-5107
Email: pphelan@cov.com

*Counsel for Blue Water Baltimore*

16

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2013, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Maryland using the CM/ECF system, which will provide electronic notice of such filing to all counsel of record registered on the CM/ECF system, including:

**On Behalf of the United States**

Cara M. Mroczek
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611
Tel.: 202-514-1447
Fax: 202-616-6583
Email: cara.mroczek@usdoj.gov

P. Michael Cunningham
Office of the United States Attorney
36 S. Charles St. 4th Fl.
Baltimore, MD 21201
Tel.: 410-209-4884
Fax: 410-962-3091
Email: michael.cunningham@usdoj.gov

**On Behalf of the State of Maryland**

Nancy Young
Assistant Attorney General
Maryland Dept. of the Environment
Office of the Attorney General
1800 Washington Boulevard
Baltimore, MD 21230-1718
Tel.: 410-537-3042
Email: nyoung@mde.state.md.

Emily A. Vainieri
Office of the Attorney General
Maryland Dep't. of the Environment
1800 Washington Blvd., Suite 6048
Baltimore, MD 21230
Tel.: 410-537-3954
Email: Emily.vainieri@maryland.gov

**On Behalf of the Mayor and City Council
of Baltimore, Maryland**

Thomas Mark Lingan
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel.: 410-244-7400
Fax: 410-244-7742 – facsimile
Email: tmlingan@venable.com

George Nilson
City Solicitor
Baltimore City Law Dept.
100 N. Holiday St. Ste. 10
Baltimore, MD 21202
Tel.: 410-396-329

Peter E. Keith
Gallagher Evelius and Jones LLP
218 N. Charles St. Ste. 400
Baltimore, MD 21201
Tel.: 410-727-7702
Fax: 410-468-2786
Email: pkeith@gejlaw.com

Dated: September 27, 2013                    _/s/ Patrick M. Phelan_____
                                             Patrick M. Phelan
                                             Federal Bar No. 29283
                                             Covington & Burling LLP
                                             1201 Pennsylvania Avenue, NW
                                             Washington, DC 20004
                                             Phone: (202) 662-6000
                                             Fax: (202) 778-5107
                                             Email: pphelan@cov.com

                                             *Counsel for Blue Water Baltimore*