IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MAYOR AND CITY COUNCIL OF BALTIMORE, MARYLAND, <br><br> Defendant. | Civil Action No. 02-cv-01524 JFM |

**DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE'S
RESPONSE TO MOTION FOR LEAVE TO INTERVENE**

Defendant, Mayor and City Council of Baltimore ("Baltimore City" or "City"), by and through its undersigned counsel, submits this Response to the Motion for Leave to Intervene ("Motion") filed on July 29, 2016 by Blue Water Baltimore ("Blue Water"), an environmental organization that seeks intervention as a Plaintiff in this action. In the event that the Court grants Blue Water's motion, the City is opposed to any effort by Blue Water Baltimore to receive an evidentiary hearing, pursue new claims or interject collateral issues, or engage in discovery, for the reasons set forth below.

**RELEVANT BACKGROUND**

On April 26, 2002, the United States and the State of Maryland filed a Complaint against the City alleging violations of Sections 301, 309(b), and 505(a) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311, 1319(b), 1365(a), and related provisions of Title 9, Subtitle 3 of the Environment Article, Annotated Code of Maryland, based upon unpermitted discharges of sewage from the City's sanitary sewer system. Also on April 26, 2002, Plaintiffs lodged a proposed Consent Decree with the Court that resolved each of the claims alleged in the

Complaint. A product of lengthy negotiations between the United States, the State of Maryland and the City, the Consent Decree was designed to avoid litigation and reflected a cooperative settlement by the federal, state and local governments to renovate the City's sewer system.

The United States published notice of the proposed Consent Decree and solicited public comments in the Federal Register on May 16, 2002 as required by the public notice obligations in 28 C.F.R. § 50.7. 67 Fed. Reg. 34953 (May 16, 2002). The United States submitted the comments received and its point-by-point response to the Court on September 27, 2002, along with the Joint Motion of the United States and the State of Maryland for Entry of the Consent Decree. The Court entered the Consent Decree on September 30, 2002 and the matter was closed.

The Consent Decree required Baltimore City to investigate and rehabilitate its wastewater collection and treatment system, which included two wastewater treatment plants, nine major pumping stations, ten minor pumping stations, and 1,400 miles of sewer mains and interceptors, and to bring the City into compliance with the CWA. The Consent Decree included a comprehensive list of required actions and an enforceable schedule with milestone dates and stipulated penalties for failure to perform required tasks, intended to eliminate combined sewer overflows and to reduce sanitary sewer overflows by January 1, 2016.

After entry of the Consent Decree, the City embarked on an extensive investigation, rehabilitation and construction program and to date has committed approximately $864 million in furtherance of this effort. *See* **Exhibit 1**, Affidavit of Pedro Aponte. Despite these efforts, the City was unable to complete all the tasks required by the Consent Decree by January 1, 2016.

The City has made significant progress in meeting its obligations under the 2002 Consent Decree. *See* **Exhibit 2**, copy of City's most recent quarterly report. Among its many

accomplishments, the City eliminated 60 of the 62 originally identified engineered sewerage and overflow structures; separated the Forest Park and the Walbrook combined sewer systems;[1] and conducted comprehensive sewershed evaluations for all eight sewersheds, the reports of which were submitted and ultimately approved by the United States Environmental Protection Agency ("EPA") and the Maryland Department of the Environment ("MDE"). The City also conducted a system-wide rainfall and flow monitoring program and for the first time ever developed a system-wide hydraulic model. Using the model, the City developed comprehensive sewershed rehabilitation plans to address both capacity related and condition deficits throughout the City's wastewater collection system.

During the course of conducting the comprehensive sewershed studies, a severe hydraulic restriction was discovered at the Back River Wastewater Treatment Plant. This restriction limits flow to the treatment plant and results in an up to **ten mile** sewage backup throughout the collection system. Correcting this problem is one of the most significant and ambitious engineering and construction projects undertaken by the City's Department of Public Works in recent history. Removing this restriction is essential to reclaiming capacity throughout the system and setting the stage for completing the remaining rehabilitation work.

Recognizing that the City would be unable to complete the work required under the 2002 Consent Decree by the 2016 deadline, EPA, MDE, and the City began negotiating a modification to the Consent Decree in 2011. These extensive discussions ultimately resulted in the modified Consent Decree that was lodged recently with this Court.

---

[1] A combined sewer system conveys both sanitary sewage and storm water in one piping system.

The construction and rehabilitation schedule in the modified Consent Decree will proceed in two phases. Phase I will include removal of the hydraulic restriction at the Back River Wastewater Treatment Plant and the modified Consent Decree requires it to be completed by January 2021. Phase I is projected to cost $630.1 million. *See* Exhibit 1, Affidavit of Pedro Aponte. The City will then assess the performance of the completed Phase I projects through a flow monitoring program and develop a Phase II plan to address remaining system deficits. The modified Consent Decree provides that Phase II projects must be completed by December 2030. Phase II is projected to cost $548.4 million. *See* Exhibit 1. The modified Consent Decree also includes additional enhancements to the City's operation and maintenance of its sewer system. It further requires that the City develop a plan to investigate sewage discharges of unknown origin, and conduct an annual forum to advise the public on the progress it is making in meeting the Consent Decree schedule and other requirements. Future program management, asset management, and flow monitoring costs are expected to be $85.1 million. *See* Exhibit 1.

A Motion to Reopen Case and Notice of Lodging of Proposed Modification to the Consent Decree were filed on June 3, 2016. Pursuant to 28 C.F.R. § 50.7, a Notice was published in the Federal Register on June 7, 2016 announcing that the proposed modification had been filed with the Court and that the United States Department of Justice would accept public comments on the proposed modification of the Consent Decree ("Proposed Modification") for a period of sixty days. 81 Fed. Reg. 36584 (June 7, 2016). Blue Water filed a Motion to Intervene on July 27, 2016 and submitted comments on the Proposed Modification on August 8, 2016.

4

## ARGUMENT

### A. Legal Requirements for Intervention

Blue Water seeks intervention of right under Fed. R. Civ. P. 24(a), or alternatively, permissive intervention under Fed. R. Civ. P. 24(b). Intervention under Fed. R. Civ. P. 24(a)(1) is permitted as of right where the movant "is given an unconditional right to intervene by a federal statute" and submits a timely motion to intervene. The CWA, 33 U.S.C. § 1365(b)(1)(B), provides that if the EPA Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court to require compliance with the CWA, then "in any such action in a court of the United States any citizen may intervene as a matter of right." Alternatively, Blue Water claims it should be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b). Permissive intervention may be allowed in the Court's discretion if: (1) a timely motion is filed; (2) the movants' claims share a common question of law or fact with the claims in the case; and (3) intervention would not cause undue delay or prejudice to the adjudication of the parties' rights. Fed. R. Civ. P. 24(b)(1)-(3).

Regardless whether intervention is permissive or as of right, the citizen suit provisions of the Clean Water Act are "not intended to enable citizens to commandeer the federal enforcement machinery." *Dubois v. Thomas,* 820 F.2d 943, 949 (8th Cir. 1987); *see also United States EPA v. City of Green Forest, Ark.,* 921 F.2d 1394, 1402 (8th Cir. 1990), *cert denied,* 502 U.S. 956 (1991) ("Had the citizens intervened, they still would not have been able to compel a consent decree on their own terms.")

The Court has the discretion to place appropriate restrictions on Blue Water's participation. The Advisory Committee Note to the 1966 Amendment to Rule 24(a) makes clear that "[a]n intervention of right under the amended rule may be subject to appropriate conditions

or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." *See also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) ("restrictions on participation may also be placed on an intervenor of right and on an original party"); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 n. 11 (D.C. Cir. 2003) (stating that a district court may limit the scope of a party intervening of right); *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 353 (5th Cir. 1997) (reasonable conditions may be imposed even upon one who intervenes as of right); *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 n. 9 (11th Cir. 1991) ("the District Court may choose to condition [the applicant's] intervention in this case on such terms as will be consistent with the fair, prompt conduct of this litigation").

### B. Appropriate Limits on Intervention

Courts have limited the participation of a party intervening of right in a civil case in a several ways. Intervenors are not entitled to an evidentiary hearing on a consent decree. "[O]nce intervenors have been given the opportunity to object to the decree they have had an appropriate day in court and a judgment on consent may be entered." *United States v. Ketchikan Pulp Co.*, 430 F.Supp. 83, 85 (D.Alaska 1977). "In absence of some substantiated claim by intervenor or some apparent fault in the decree as illuminated by the public comments the court will not require a factual presentation to support every decision reached by the government." *Id.* at 86. It is within the sound discretion of the court to determine whether an evidentiary hearing is necessary before ruling on a proposed consent decree. *United States v. Metro. St. Louis Sewer District*, 952 F.2d 1040, 1044 (8th Cir. 1992) (right to intervene "does not grant intervenors an unconditional right to an evidentiary hearing"). *See also City of Green Forest*, 921 F.2d at 1402

(8th Cir.1990), cert. denied, ___ U.S. ___, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991) (harmless error to deny formal intervention where citizens, *de facto*, were permitted to participate by filing objections to consent decree during public comment period.)

Courts also limit intervenors' pursuit of new claims and interjection of collateral issues. *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 21 (D.D.C. 2010); *Fund for Animals, Inc. v. Norton*, 322 F.3d at 737 n. 11; *see also Forest County Potawatomi Cmty. v. United States*, 2016 U.S. Dist. LEXIS 50190, *23-26 (Apr. 14, 2016 D.D.C.) (imposing similar restrictions as *Wildearth*). In the context of this case, the City opposes any effort by Blue Water to interject collateral issues that will only serve to delay approval of the Proposed Modification and thus delay construction and rehabilitation activities. *See, e.g.,* Memorandum in Support of Blue Water Baltimore's Motion to Intervene, pps. 16-17, seeking a requirement that City waterways achieve water quality standards and expansion of public participation opportunities beyond that required by the Proposed Modification or law.

Courts also limit intervenors' ability to engage in discovery or to initiate their own discovery. *See e.g. United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D. N.C. 2001) (in ongoing Clean Air Act enforcement action brought by government, court limited intervenor's ability to take part in ongoing discovery or to initiate its own discovery); *cf. Arizona v. Motorola, Inc.,* 139 F.R.D. 141, 148 (D. Arizona 1991)(court declined to allow non-settling defendants in CERCLA action to conduct discovery or "usurp the agency's authority to structure[a consent decree]")(overruled on unrelated grounds, *United States v. Aerojet General Corp.,* 606 F. 3d 1142 (9th Cir. 2010)).

Here, discovery is unnecessary in light of the considerable effort that the City has expended in responding to numerous requests for information submitted by Blue Water

7

Baltimore and the Environmental Integrity Project, which shared information concerning the City system and collaborated in the submittal of comments on the Proposed Modification. Furthermore, DPW staff conducted a workshop on the technical approach to the modified Consent Decree on July 7, 2016 which was attended by representatives from Blue Water Baltimore. *See* **Exhibit 3**, sign in sheet. Blue Water submitted extensive comments on the Proposed Modification during the recently completed public comment period. EPA and MDE must consider all the comments received on the Proposed Modification to evaluate whether additional modifications are warranted. Considering the extensive information that has already been provided to Blue Water and that will be provided in response to citizen comments, further discovery is unwarranted and could unnecessarily delay the City's sewer rehabilitation efforts.

## CONCLUSION

The City considers intervention by Blue Water to be unnecessary and counterproductive. However, should the Court grant Blue Water's motion to intervene, for the reasons stated above, the City requests that intervention be limited to (1) filing briefs in response to a motion to enter the Modified Decree, and (2) filing an appeal should the Court modify the decree over the proposed intervenor's objections.

Respectfully submitted,

_____/s/_____
GEORGE NILSON
City Solicitor
Baltimore City Law Dept.
100 N. Holiday St., Suite 101
Baltimore, MD  21202
Phone: 410-396-3297

8

_____/s/_____   _____/s/_____
Peter E. Keith                                  Thomas M. Lingan
Federal Bar No. 01983                           Federal Bar No. 08894
Gallagher Evelius and Jones LLP                 Venable LLP
218 N Charles St., Suite 400                    750 E. Pratt Street, Suite 900
Baltimore, MD 21201                             Baltimore, MD 21202
Phone:410-727-7702                              (410) 244-7400
Fax: 410-468-2786                               (410) 244-7742 – facsimile
pkeith@gejlaw.com                               tmlingan@venable.com

*Counsel for Mayor and City Council of Baltimore*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2016, the foregoing Response to Motion for Leave to Intervene was served on the following via ECF:

**On Behalf of the United States:**

Cara M. Mroczek
United States Department of Justice
Environmental and Natural Resources Div.
Ben Franklin Station, PO Box 7611
Washington, DC  20044
Phone: 202-514-1447
Fax: 202-616-6583
cara.mroczek@usdoj.gov

P Michael Cunningham
Office of the United States Attorney
36 S Charles St., 4th Fl.
Baltimore, MD  21201
Phone: 410-209-4884
Fax: 410-962-3091
michael.cunningham@usdoj.gov

**On Behalf of the State of Maryland:**

Nancy Young
Office of the Attorney General
Maryland Dep't. of the Environment
1800 Washington Boulevard
Baltimore, MD 21230-1718
Phone: 410-537-3042
nyoung@mde.state.md

**On Behalf of Blue Water Baltimore:**

Theodore L. Garrett
Covington and Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Phone: 202-662-5398
Fax: 202-778-5398
tgarrett@cov.com

Patrick M. Phelan
Covington and Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Phone: 202-662-6000
Fax: 202-662-6291
pphelan@cov.com

Thomas R. Brugato
Covington and Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Phone: 202-662-5515
Fax: 202-778-5515
tbrugato@cov.com

**On Behalf of Mayor and City Council of Baltimore, Maryland:**

George Nilson
City Solicitor
Baltimore City Law Dept.
100 N. Holiday St., Suite 101
Baltimore, MD  21202
Phone: 410-396-3297

Peter E. Keith
Gallagher Evelius and Jones LLP
218 N Charles St., Suite 400
Baltimore, MD  21201
Phone:410-727-7702
Fax: 410-468-2786
pkeith@gejlaw.com

                                                /s/
                                          Thomas M. Lingan